OPINION OF THE COURT
Gabrielli, J.
CPL 270.25 states that: “A peremptory challenge is an objection to a prospective juror for which no reason need be assigned. Upon any peremptory challenge, the court must exclude the person challenged from service.” This right to peremptory challenges has been exercised by prosecutors and defendants in this State pursuant to the same or similar statute for over 100 years (see Walter v People, 32 NY 147). In Swain v Alabama (380 US 202), the Supreme Court determined that a prosecutor is not required to disclose his reasons for excusing prospective jurors in a particular case on the mere allegation by the defense that peremptories are being used to exclude minority jurors. We find nothing in our State Constitution or statutes which compels a departure from this holding of the Supreme Court.[1]
Defendant was convicted of robbery in the first and second degrees for his part in the November 15, 1978 gunpoint robbery of Philip Roberts, a student at Pratt Institute. After Roberts had withdrawn money from an automatic bank teller machine, the defendant and several companions pushed him into the vestibule of an apartment building and took his money. Defendant was identified by Roberts several weeks later when, while Roberts was being *545 driven by police around the neighborhood where he was accosted, he spontaneously picked out the defendant from a group of four individuals standing on a street corner.
During jury selection, the defense movéd for a mistrial, claiming that the prosecutor had unlawfully used peremptory challenges to exclude jurors on the basis of race. In the alternative, the defense moved for a hearing to inquire into the prosecutor’s use of her peremptory challenges. In pursuing these motions, the defense pointed out that 8 of the 11 peremptory challenges exercised by the prosecutor had been used to exclude all of the blacks and the only Hispanic prospective juror drawn. Nevertheless, these defense motions were denied. The court relied upon Swain v Alabama (supra) in concluding that it is inappropriate to inquire into a party’s motives solely on the basis of the manner in which peremptory challenges have been exercised in a single case. On the appeal from defendant’s conviction, the Appellate Division affirmed, without opinion. Defendant now argues to this court, inter alia, that the trial court committed reversible error in denying his motion for a mistrial or for a hearing to inquire into the prosecutor’s intentions and motives in exercising peremptory challenges to exclude certain jurors.
The issue of minority representation on criminal juries has been the subject of several decisions by the Supreme Court. These decisions draw a critical distinction between the jury pool, which is the group of prospective jurors from which the litigants will select a jury to hear their particular case, and the jury that is ultimately chosen to serve. The Sixth Amendment requires that the jury pool be selected from a representative cross section of the community (Taylor v Louisiana, 419 US 522), and distinctive groups in the community may not be systematically excluded from the pool. Once the jury pool is selected, however, prospective jurors may then be excluded through the exercise of cause challenges and peremptory challenges. The challenge for cause removes those jurors who either admit to actual bias or those who admit to circumstances from which the law will infer an overwhelming potential for bias. The peremptory challenge, in contrast, is a challenge for which no reason need be assigned. This challenge *546 enables either the prosecutor or the defense to exclude prospective jurors who may harbor subtle prejudices which may be sensed by counsel but which are not explicitly revealed by the prospective juror on voir dire.[2] It is also designed to permit counsel to remove prospective jurors who counsel may have alienated during the course of questioning on voir dire.
In Swain v Alabama (supra), the Supreme Court clearly determined that the prosecutor’s motives for striking particular jurors may not be subjected to scrutiny simply upon the assertion by the defense that peremptories are being used to exclude minorities. The court noted that only if it can be established that the prosecutor’s office is using peremptory challenges systematically to exclude minorities from juries over a period of time will a prima facie case of discrimination be made out. The decision in Swain upheld the traditional model for jury selection, which “assumes that impartiality is best realized by first choosing a pool of jurors from the community at large, excusing those clearly biased, and then permitting the parties to excuse additional jurors who, in their view, are less likely than others to provide a fair trial” (Saltzburg & Powers, Peremptory Challenges and the Clash Between Impartiality and Group Representation, 41 Md L Rev 337, 359).
In urging a reversal in this case, defendant argues that this court should reject the holding of the Supreme Court in Swain on the basis of the provisions of our State Constitution. Defendant would have this court overturn the present system of limited peremptory challenges by requiring the prosecutor to shoulder the burden of assigning and proving justifiable reasons for his exercise of these challenges whenever there is a statistically supportable allegation that the prosecutor is removing prospective jurors on the basis of their status as minority members of the community. The defendant, in effect, would require the prosecutor to prove that a prospective juror’s racial biases, whether based upon group affinity or otherwise, would interfere with the attainment of a fair and impartial verdict before that juror could be excused. We decline to adopt *547 this position for it would convert the peremptory challenge system into a system based solely upon challenges for cause. Indeed, we find no persuasive reason for departing from our present method of jury selection.
A system which would require counsel to prove that a prospective juror harbors racial, sexual or religious prejudices that could interfere with the attainment of a fair and just verdict would succeed in eliminating only the most blatant biases from the jury. To begin with, we must recognize that it is the sad reality of our times that predisposition and bias may, in some individuals, be based upon racial, religious or sexual status. At the extreme end of the spectrum, those who admit to such prejudices or admit to membership in groups from which such prejudices may readily be inferred, obviously should be disqualified from sitting on juries where these prejudices could interfere with the attainment of a fair and just verdict. For example, fundamental fairness dictates that a member of the Ku Klux Klan be disqualified from sitting on a jury in a case in which a black man is accused of assaulting a white. These individuals can adequately be eliminated through the challenge for cause. Just as dangerous to the attainment of justice, however, is bias on the part of jurors which is not quite as overt in speech or behavior. While the questioning that takes place on voir dire is perfectly suited to ferret out and eradicate blatant and admitted bias from the jury, it is simply unlikely to disclose certain subtle and hidden biases which could prevent the jury from rendering a fair and impartial verdict. Several reasons for the inadequacy of voir dire for this purpose have been identified (see Saltzburg & Powers, Peremptory Challenges and the Clash Between Impartiality and Group Representations, 41 Md L Rev 337, 355). First, jurors may be reluctant to admit their prejudices before spectators or others present in the courtroom during the voir dire. Second, certain prospective jurors may evade full disclosure of their prejudices in an effort to avoid being struck from the jury. Finally, other prospective jurors may simply be unaware of the existence of certain biases or prejudices they may harbor. A system of jury selection in which reasons must be assigned for the removal of individual jurors seriously hampers the elimi *548 nation of these biases from the jury. The inadequacy of relying upon voir dire to filter out all potential biases based upon group affinity is exacerbated by the reluctance of some Trial Judges to permit extensive, time-consuming voir dire examination.
In this vein, it has long been recognized that one who discriminates “cannot be expected to declare or announce his purpose. Far more likely is it that he will pursue his discrimination practices in ways that are devious, by methods subtle and elusive — for we deal with an area in which ‘subtleties of conduct * * * play no small part’ ” (Matter of Holland v Edwards, 307 NY 38, 45; see, also, Imperial Diner v State Div. of Human Rights, 52 NY2d 72, 77). In order to effectively meet this problem the usual and more demanding standards of proof have been reduced in cases where the object of the law is to eliminate discrimination or bias (Matter of Holland v Edwards, supra). In the jury selection process that rule is served by the peremptory challenge which permits an experienced attorney to eliminate a juror who he believes might be biased against his case in instances where the potential bias cannot be disclosed or articulated to the degree necessary to establish a challenge for cause.
We further note that inherent in relying upon the cause challenge to eradicate certain prejudices from the jury is that litigants may be reluctant to engage in the intensive questioning needed to reveal the biases of potential jurors. Pointed questions directed at an area as sensitive as a potential juror’s racial, religious or sexual biases may, even where such biases do not exist, alienate a juror against counsel and his position. To avoid the possibility of such juror alienation, counsel may be forced to accept the risk that biased jurors may be sworn to serve on the jury.
Furthermore, to the extent that restrictions on a party’s exercise of the peremptory challenge would require more extensive voir dire to disclose provable racial biases, as well as requiring extensive evidentiary hearings on motions to determine the motives of a party exercising a peremptory challenge, the rule proposed by the defendant would invite the additional delays at trial which our justice system can ill afford. In this era of over-crowded court *549 calendars and scarce judicial resources, we should not alter the trial stage in such a way as to necessitate or encourage unwarranted additional lengthy delays.
Finally, under the system proposed by defendant there is a danger that the prejudices of prospective jurors may not be recognized by Trial Judges, despite the presence of answers given on voir dire which suggest the possibility of bias. Due to the sensitivity of the subject of racial, religious or sexual prejudice, Trial Judges may be hesitant to strike a juror on this basis, particularly when the juror denies the existence of such bias. As a result, the spectre of racial prejudices influencing jury verdicts may be heightened rather than hindered under the defendant’s proposed formulation. This danger does not exist under a system where counsel may excuse a limited number of prospective jurors without assigning specific reasons for doing so.
Although concern has been expressed over the possible abuse of a system containing unrestricted peremptory challenges, the potential for abuse is limited by certain practical considerations. If counsel excuses potential jurors on the basis of group status he or she will waste limited peremptory challenges which could be used to excuse other potential jurors who might be more predisposed to the opponent’s position. Furthermore, counsel must be aware that he may alienate those jurors ultimately selected if it becomes apparent that selection was made upon the basis of group status.
For all of the foregoing reasons, we find no compelling basis for rejecting the holding of the Supreme Court in Swain v Alabama (supra). The benefits of requiring the prosecutor to justify the exercise of certain peremptory challenges are simply outweighed by the damage to a system of jury selection which best serves to guarantee a fair and impartial jury. As the Supreme Court noted, the peremptory challenge “ ‘must be exercised with full freedom, or it fails of its full purpose’ ” (Swain v Alabama, supra, at p 219, citing Lewis v United States, 146 US 370, 378).
Additionally, some comment should be made regarding the defendant’s reliance (and, indeed, that of the District Attorney) upon certain provisions of our State Constitu *550 tion. They first refer to section 2 of article I of the New York Constitution, which guarantees the right to trial by jury, and section 1 of that same article, which appears to specify that conviction of a defendant must be by “the judgment of his peers.” In Taylor v Louisiana (419 US 522, supra), the court held that the Sixth Amendment right to a jury trial, a right which obviously and necessarily implies the right to a judgment of one’s peers, requires only that distinctive groups in the community may not be systematically excluded from the jury pool. Nothing in the language of our State’s counterpart to the Sixth Amendment right to a jury trial suggests that the framers of our State Constitution intended a more expansive interpretation. Similarly, there is nothing in the language or history of our State equal protection provision (art I, § 11) which suggests that the scope of the rights guaranteed by this provision should extend beyond the rights guaranteed by the equal protection clause of our Federal Constitution in this instance. It must be recalled that in Swain, the Supreme Court specifically rejected the Federal equal protection challenge, and our court has held that our State constitutional equal protection clause is no more broad in coverage than its Federal prototype (Matter of Esler v Walters, 56 NY2d 306).[3] Furthermore, defendant’s reliance on our State Constitution’s due process provision is also unavailing.
We have considered defendant’s remaining contentions and we find them to be without merit.[4] Accordingly, the order of the Appellate Division should be affirmed.

. I observe that on this underlying issue the People join defendant in contending that the provisions of our State Constitution prohibit the use of peremptory challenges to exclude potential jurors solely on the basis of race.

. The number of peremptory challenges that may be exercised by each party is strictly limited by CPL 270.25 (subd 2).

. In Matter of Esler we said: “In certain areas, of course, the State Constitution affords the individual greater rights than those provided by its Federal counterpart. We have noted, however, that the wording of the State constitutional equal protection clause (NY Const, art I, § 11) ‘is no more broad in coverage than its Federal prototype’ and that the history of this provision shows that it was adopted to make it clear that this State, like the Federal Government, is affirmatively committed to equal protection, and was not prompted by any perceived inadequacy in the Supreme Court’s delineation of the right (Dorsey v Stuyvesant Town Corp., 299 NY 512, 530-531)” (56 NY2d, at pp 313-314 [n omitted]).

. We have no occasion to pass on the merits of defendant’s contention that improper negative identification testimony was admitted in this case. The testimony of which defendant complained (anticipated by both counsel in their openings) was as to the failure of the complainant to earlier identify defendant among those individuals he viewed in the neighborhood several weeks after the robbery took place.