Harold **SCHREIBER**, Petitioner,

v.

Dominick R. **SALAMACK**, Superintendent, Edgecombe Correctional Facility, Respondent.

**No. 85 Civ. 1263 (GLG).**

United States District Court, S.D. New York.

Oct. 17, 1985.

Harold Schreiber, petitioner, pro se.

Mario Merola, Dist. Atty. by Robert L. Shepherd, Asst. Dist. Atty., Bronx, N.Y., for respondent.

## OPINION

GOETTEL, District Judge:

This habeas corpus petition presents several questions, one more interesting than those typically raised following a state felony conviction. The petitioner asserts that he was denied a fair trial because of the prosecutor's discriminatory use of peremptory challenges during jury selection. Despite this controversial issue, we conclude that the petition must be denied.

## I. BACKGROUND

On December 18, 1981, the petitioner was convicted by a jury in Bronx County of conspiracy in the fourth degree for planning to destroy a building used by his business. He was sentenced as a second

felony offender to an indeterminate term of imprisonment of two to four years, which he is still serving. The conviction was unanimously affirmed by the Appellate Division, without opinion, and the Court of Appeals denied leave to appeal. The petitioner moved to set aside the sentence; that motion was denied.

On May 31, 1984, the petitioner again moved to vacate his conviction, this time raising a new issue. He asserted that his constitutional rights had been violated by the prosecutor's alleged use of peremptory challenges to systematically exclude white persons from the jury. He based his argument upon *McCray v. Abrams,* 576 F.Supp. 1244 (E.D.N.Y.1983), *aff'd in part and vacated in part,* 750 F.2d 1113 (2d Cir.1984). The People asserted that the motion was procedurally barred for failure to raise this issue on appeal. On July 12, 1984, the State Supreme Court denied the motion to vacate conviction, without opinion. Leave to appeal to the Appellate Division was later denied.

### A. *The Instant Petition*

#### 1. Sufficiency of the Evidence Claim

■ The petitioner raises several issues in this federal habeas corpus petition. The first is that the evidence at trial was legally insufficient to enable a rational trier of facts to have found guilt beyond a reasonable doubt, *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This can be dealt with summarily. The principal witness for the prosecution was the prospective "torch." The petitioner argues that the witness was of such questionable veracity that his testimony should have been rejected by the jury. But, credibility of a witness is a matter for the finder of fact. While the petitioner claims that the witness was an accomplice and that his testimony was not corroborated as required by New York law, *People v. Daniels,* 37 N.Y.2d 624, 630, 376 N.Y.S.2d 436, 440, 339 N.E.2d 139, 141 (1975), that clearly was not the case. The witness was wired with a recorder on which the petitioner's co-defendant can be heard planning the destruction of the building. On these tapes, the witness described at length the defendant's instructions to him concerning the plan to destroy the building and the insurance benefits he might receive. In addition, a wealth of other facts supported the prosecution's case, including a large amount of back taxes owed, a recent increase in the amount of insurance (which brought the insurance above the secured loans against the premises), and other physical evidence concerning the sealed condition of the building intended to promote its destruction.

The petitioner makes other unconvincing arguments, such as the fact that the replacement cost of the building exceeded the insurance (not an unusual situation) and that a real estate agent testified that the building *might* have been sold for more than its insured value. These are not factors that would have prevented any rational juror from returning a verdict of guilty beyond a reasonable doubt in light of the other evidence.

#### 2. Peremptory Challenge Claim

■ The interesting question in this petition is the attack on the prosecutor's use of peremptory challenges to strike prospective white jurors. As the petitioner puts it:

> A white 65 year old Jewish businessman from Freeport, Long Island, was on trial for conspiracy to blow up his commercial building in the South Bronx. The People's key witness was a black junkie who was purported to have been hired to do away with the subject building for a mere $1500. By the prosecutor's own remarks, one must conclude that the reason he excluded whites from the jury was because he was afraid whites would have been unable to identify racially with the witness.

Petitioner's Memorandum of Law at 27–28. At trial, the petitioner objected to the prosecutor's use of his peremptory challenges primarily against white jurors. The petitioner did not, however, pursue this argument on appeal. His co-defendant did appeal on this issue, but was unsuccessful.

The respondent argues that the petitioner has waived his right to habeas corpus review of this question because he by-

passed the state appellate procedures and failed to show cause for his procedural default and prejudice resulting from the alleged violation. *See Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The petitioner replies that, until the federal courts in this circuit changed the law (which occurred long after his appeal had been denied), appealing the peremptory challenge issue appeared pointless. This, he asserts, justifies any alleged bypass of state procedures because "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). The petitioner also notes that, since the State Supreme Court did not indicate why it denied his renewed motion to vacate the conviction, we cannot be sure the decision was based upon a procedural bypass.[1]

The respondent further argues that the co-defendant raised the peremptory challenge issue on his state appeal while this petitioner did not. The co-defendant's appeal was denied. *See People v. Roman,* 106 A.D.2d 261, 484 N.Y.S.2d 389 (1st Dep't 1984) (affirmance of conviction, without opinion). This argument does more to support the petition than oppose it, since it demonstrates that the state courts have "had a chance to mend their own fences and avoid federal intrusion." *Engle v. Isaac, supra,* 456 U.S. at 129, 102 S.Ct. at 1572.

An additional equitable, if not legal, argument is that the co-defendant successfully attacked his conviction in the federal court. *Roman v. Abrams,* 608 F.Supp. 629 (S.D.N.Y.1985). Judge Brieant granted that petition on May 15, 1985, based on the Second Circuit's recent decision in *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984), *rehearing en banc denied,* 756 F.2d 277

(2d Cir.), *petition for cert. filed,* 53 U.S. L.W. 3671 (March 4, 1985) (No. 84–1426).

Under all these circumstances, we are reluctant to dismiss this petition on the basis of procedural bypass and the failure to give the state courts an adequate opportunity to consider the issue. We turn, therefore, to the merits of the petition.

## II. DISCUSSION

### A. *The McCray v. Abrams Decision*

This Court discussed *McCray v. Abrams, supra,* in our memorandum decision dated April 22, 1985. To recap briefly, McCray, a black man, was charged with robbing a white man. He was tried before a jury comprised of nine white and three black jurors. The trial ended in a hung jury, with either two or all three of the black jurors holding out for acquittal. At a retrial with the same Assistant District Attorney prosecuting, the State exercised most of its peremptory challenges (the State got fifteen, as did the defendant) against black and hispanic jurors. The case went to trial with, at most, only an alternate juror who was black or hispanic. The defendant was convicted. The Appellate Division affirmed without opinion; the New York Court of Appeals affirmed 4–3. *People v. McCray,* 57 N.Y.2d 542, 443 N.E.2d 915, 457 N.Y.S.2d 441 (1982). The Supreme Court of the United States denied a petition for certiorari 7–2. *McCray v. New York,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983).

McCray then filed a federal habeas corpus petition in the Eastern District of New York. The State, surprisingly, agreed that the discriminatory use of peremptory challenges violates a defendant's constitutional rights, but argued that *McCray* had not made a prima facie showing of discriminatory challenges and that, even if he had, an evidentiary hearing should be held. The district court granted the petition and an appeal followed.

---

**1.** In fact, the State Supreme Court issued no written opinion to accompany its July 12, 1984, decision. Thus, we can only speculate on its reasoning. *See* Titone, *Federal Habeas Corpus—*

*Understanding State Procedure,* N.Y.L.J., May 9, 1983, at 1, and this Court's letter response, N.Y. L.J., May 25, 1983, at 2.

The Second Circuit Court of Appeals affirmed 2–1.[2] (There is a strong dissent from Judge Meskill.) Much of the majority opinion is devoted to distinguishing the Supreme Court's decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Swain* held that the State's exclusion of Negroes from a petit jury by use of peremptory challenges did not violate a defendant's constitutional right to equal protection of the laws. *Id.* at 221, 85 S.Ct. at 836. The Court noted the paramount importance of peremptory challenges in assuring the selection of a fair and impartial jury, *id.* at 219, 85 S.Ct. at 835, and found that

> [t]he presumtion in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.

*Id.* at 222, 85 S.Ct. at 837. However, the Court went on to note that if Negroes were systematically removed from every jury in case after case, the presumption could be overcome. *Id.* at 223–24, 85 S.Ct. at 837–38.

The *McCray* court focuses on the sixth amendment rather than the equal protection clause. It acknowledges that a defendant has no sixth amendment right to a petit jury of a particular composition. *Id.* at 1128. However, the majority finds that the sixth amendment is violated by the state's systematic elimination of the possibility that the petit jury will be comprised of a cross section of the community. *Id.* at 1129. It construes the sixth amendment

to require the court to decide each case on the basis of the acts or practices complained of in that very case, and not to require the defendant to show, as *Swain* requires for an equal protection claim, that those acts or practices have had undesirable effects in case after case. *Id.* at 1130.

The majority notes that "the goal of jury selection is to assure that each juror is free from bias." *Id.* at 1131. It then points out that

> the notions that all persons who share an attribute, such as the same skin color, will *ipso facto* view matters in the same way, and that minority groups are less able than whites to decide the case solely on the basis of the evidence, are both fallacious and pernicious.... Any notion that white persons can be objective in viewing a case on its merits and that blacks *qua* blacks cannot, is particularly objectionable.

*Id.* It concludes that the prosecution may exercise its peremptory challenges to obtain an unbiased jury panel but may not "excuse jurors solely on the basis of their racial affiliation." *Id.*

Under *McCray*, peremptory challenges are no longer free from judicial scrutiny.[3] A defendant can demonstrate a prima facie violation of his rights by showing that

> (1) the group alleged to be excluded is a cognizable group in the community, and (2) there is a substantial likelihood that the challenges leading to this exclusion have been made on the basis of the individual venirepersons' group affiliation rather than because of any indication of a possible inability to decide the case on the basis of the evidence presented.

*Id.* at 1131–32. To rebut this showing, "the prosecution need not show cause for the excuse of the jurors in question but

---

**2.** The Second Circuit affirmed the district court's finding that McCray had made a prima facie showing of discriminatory use of peremptories but remanded the case for hearing to afford the state an opportunity to rebut the claimed discrimination.

**3.** The *McCray* majority felt that *Swain* "created a myth that peremptory challenges are sacrosanct." *McCray, supra,* 750 F.2d at 1130.

only genuine reasons other than group affiliation." *Id.* at 1132.

## B. *The Co-Defendant's Habeas Corpus Petition*

The co-defendant who, like the petitioner, is white, brought a habeas corpus action in federal court claiming that the State's systematic exclusion of white jurors denied him a fair trial. Based upon *McCray*, Judge Brient granted the co-defendant's petition and directed that he be released unless retried. *Roman v. Abrams,* 608 F.Supp. 629 (S.D.N.Y.1985). That decision is now on appeal.

The petitioner in our case has argued that we should give deference to Judge Brieant's decision in his co-defendant's action. We have the highest regard for Judge Brieant's wisdom. We agree with many of his observations concerning the impact of the Second Circuit's opinion in *McCray*. Both that case and this indicate the accuracy of the dissenting opinion in *McCray*, which found the majority opinion unworkable and contrary to the law of this, and almost every other, federal circuit. *See id.* at 641 (citing *McCray, supra,* 750 F.2d at 1135 (Meskill, C.J. dissenting)).[4]

We have also examined the record of the hearing held before Judge Brieant with respect to the jury selection in this petitioner's case. (Judge Brieant tracks the jury selection process through eight rounds in his opinion in *Roman v. Abrams, supra,* 608 F.Supp. at 632–34, and there is no need to repeat it.) That hearing clearly demonstrates the difficulty of applying the *McCray* ruling. For example, when the prosecutor was asked what sort of jury he was trying to pick, he responded as follows:

A jury that in my view could call the shots in laymen's terms, a jury that wasn't too intellectual that may get caught up on all sorts of perhaps irrelevancies and come up with a million different reasons why not to convict, and I didn't want a jury that wasn't too uninformed.

Transcript of Hearing Before Judge Brieant, Feb. 13, 1985, at 55. While this explanation may defy understanding, it is apparent in other parts of the transcript that the prosecutor was concerned about the credibility of his major witness (a black man with an extensive criminal record) and was looking for jurors who might empathize with the witness. The prosecutor was apparently asserting that he was not challenging white jurors because of their race, but rather was affirmatively seeking black jurors who might be more accepting of his major witness.

In addition, numerous practical difficulties were encountered during the hearing. Apparently, no one (including the prosecutor) made any notes identifying the actual race of the prospective jurors. The prosecutor apparently challenged eight white jurors, two hispanic, and one black. Debates developed over whether the challenged hispanic jurors were light skinned or dark skinned. (The ultimate jury selected contained three whites, three hispanics, and six blacks; the prosecution did not use three of its peremptory challenges.) These intricacies led to questions that were sometimes incomprehensible.[5]

In the final analysis, it appears that the prosecutor exercised his peremptory challenges in the manner that he did since: "I wanted jurors whom I believed, based on all of my experiences, would convict."

---

**4.** It is not impossible that, in following the majority rule in *McCray*, Judge Brieant was attempting to demonstrate the pitfalls apparent in the literal application of that decision.

**5.** For example, at page 130 of the transcript, we have this question:

Q. Finally, Judge, I mean it, you told the jurors during selection in this case, didn't you, that it was your opinion that jurors who were most like or that people who were most like

the person they are to judge would in that situation tend to be more fair?

This question was objected to and the objection was sustained on the ground that "the record speaks for itself." Throughout the hearing, it was apparent that the prosecutor was having great difficulty recalling what he did and why he did it. The alternative, stopping jury selection for mini-hearings, could avoid this, but at the expense of disrupting the trial.

Judge Brieant found the prosecutor's explanation of his reasons for his challenges "childish and pretextual as well as unbelievable," *Roman v. Abrams, supra,* 608 F.Supp. at 634, but this seems to be a candid response. Furthermore, as Judge Brieant later noted, the whole idea of peremptory challenges is at odds with the necessity of giving reasons. *Id.* at 638.

## C. *Jury Selection Principles*

### 1. Intuition versus Discrimination

The simple, direct approach to jury selection of seeking jurors who would convict could be described as discriminatory, either by intent or by impact. However, for hundreds of years trial attorneys have been attempting to identify, from the nature of the case and the parties, what sort of jurors would be favorable or unfavorable to their position and then, on the basis of the limited information available from the *voir dire,* determine where each prospective juror would fit. In making such determinations, the attorney *must* attribute personal characteristics to an individual on the basis of his being a member of an identifiable group. This is, of course, an exercise in raw bias. The result is often incorrect, because, *inter alia,* the group leanings are misperceived or the individual's allegiances misjudged. However, along with the trial lawyers' intuitive reaction to a prospective juror's personality, it is the major basis for exercising peremptory challenges. This was clearly recognized by the Supreme Court in *Swain v. Alabama, supra,* 380 U.S. at 220–21, 85 S.Ct. at 835–36.

### 2. Peremptories after *McCray*

█ The issue before us is whether the *McCray* opinion bars *all* such challenges or only those directed against a "cognizable group in the community," *McCray, supra,* 750 F.2d at 1131–32, such as a minority race. While logic might dictate that the same sort of considerations would be applicable to the challenging of white jurors when there is a white defendant, such was clearly not the intention of that decision. Indeed, the majority noted that "[i]n most

communities a majority of those eligible for jury duty are white; and as a practical matter, the prosecution does not peremptorily excuse whites simply because they are whites." *Id.* at 1121. We see no indication in that decision that the court intended reciprocal treatment for white defendants, since the opinion is overwhelmingly concerned with the rights of minorities.

The attack in the instant petition is to the challenging of white jurors who, in most parts of the country, are an overwhelming majority of the community, not a "cognizable group." Of course, if a broad interpretation is given to that phrase, most veniremen who are challenged belong to *some* undesirable cognizable group in the eyes of the challenger. To take an extreme example, a challenge to a juror who had been accused of the same crime as the defendant on trial, but who denies that this would effect his or her impartiality, could be viewed as an attempt to exclude a cognizable group.

The *McCray* rule also ignores the fact that many challenges are used not for the negative purpose of getting rid of unfriendly jurors but for the positive purpose of obtaining those believed to be favorable to the challenger's side.[6] Moreover, a prosecutor is not going to waste a peremptory because of racial animus unless he believes that the particular prospective juror may have a strong affinity toward the defendant. As Judge Meskill's *McCray* dissent points out,

> the actual issue in this case is not whether a prosecutor may systematically exclude members of some group from sitting on juries but whether a prosecutor may use peremptory challenges to exclude individual members of a group because she believes that *in that particular case* they *may* be biased in favor of members of the defendant's group. A competent prosecutor will only strike a member of the defendant's group in situations where she believes the possibility of that individual having a group bias—

---

**6.** Judge Brieant rejected this as describing "the doughnut without mentioning the hole that goes with the doughnut." *Roman v. Abrams, supra,* 608 F.Supp. at 635.

**1440**

even if very small—is greater than the possibility of some other prospective juror having a bias.

*Id.* at 1138 (footnote omitted).

It is this Court's belief that, although well-intentioned, the *McCray* ruling raises innumerable practical difficulties that outweigh its usefulness. *See King v. County of Nassau*, 581 F.Supp. 493, 501–02 (E.D.N.Y.1984) (discussing problems anticipated as a result of the Eastern District's decision in *McCray*). It is not clear from the *McCray* opinion how extensive the "discriminatory" use of peremptory challenges must be to warrant a mistrial.[7] If, for example, the prosecutor uses four of his six challenges against minority jurors and establishes a non-racial reason for two or three of these challenges, must a mistrial be granted because one or two challenges cannot be supported by a claim amounting to quasicause? For that matter, if there is only one Oriental juror and the prosecutor challenges that one without a non-racial explanation, should the court declare a mistrial? The majority opinion seems most concerned with total exclusion, and one out of one leaves none. Certainly, if the defendant is Oriental, it would seem to be a violation under the *McCray* decision. Moreover, the *McCray* ruling is applicable only to the prosecutor, thereby giving the defense a substantial advantage. The use of peremptory challenges was also meant to insure the rights of the prosecution. *Swain v. Alabama, supra*, 380 U.S. at 219–20, 85 S.Ct. at 835–36.

Besides the problems adverted to above, numerous other practical considerations arise. The first and perhaps most sweeping question is whether the identifiable group concept must be one that relates to the defendant and the case on trial. (*E.g.,* can a white defendant object to the challenging of black jurors?) Even if connected to the particular defendant on trial, how is the court to know at the outset which identifiable groups have a relationship to a case? (Depending on how broadly the term is construed, there may be thousands of identifiable groups.) In a particular case, it may not be apparent until the evidence is in what groups are significant to the case. Even if we require all peremptory challenges to be made in writing, so as to keep a record of who challenged which jurors, how are we going to determine whether a previously challenged juror belonged to an identifiable group?[8] Even when there is an obvious advance signal, such as minority defendants, are we to question tan-skinned jurors who have been challenged to determine whether they belong to "cognizable groups" so as to keep accurate records of the challenges used?

## III. CONCLUSION

 Considering all of the practical difficulties in enforcing the *McCray* opinion, it is certainly not the wish of this Court to expand its application. Since we do not believe it was the intention of the majority in *McCray* to consider white persons a "cognizable group," and since there is no clear indication that the intention of the court was to prohibit affirmative bias (*i.e.,* the selection of black jurors who might be more accepting of the black witness with the criminal record), this Court holds that *McCray* does not mandate granting this habeas corpus petition. The petition is, therefore, denied. However, in light of Judge Brieant's contrary conclusion in *Roman v. Abrams, supra*, we will issue a certificate of probable cause to appeal.

SO ORDERED.

---

7. The *McCray* opinion suggests that the failure of the trial court to inquire into the prosecutor's reasons for peremptorily challenging minorities could cause the appellate courts to order a new trial without further proceedings.

8. For example, if, as happened recently in a case before me, defense counsel challenges the prosecutor's use of challenges claiming he has attempted to purge the jury of Jewish jurors, how are we to tell whether those jurors already excused were in fact Jewish?