THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KENNETH SIMPSON, Respondent.

First Department, March 18, 1986

### APPEARANCES OF COUNSEL

*Howard Bromberg* of counsel *(Amyjane Rettew* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Seymour Frank* of counsel *(Audrey Hirsch* with him on the brief; *Seymour Frank & Associates,* attorneys), for respondent.

### OPINION OF THE COURT

FEIN, J.

After conviction of criminal possession of a weapon in the third degree, defendant's motion to set aside the jury verdict because of ineffective assistance of counsel at trial was granted. Defendant's motion to set aside the verdict because the alleged prosecutorial use of peremptory challenges to exclude blacks from the jury denied him a fair trial was denied. The People's appeal challenges the order on ineffectiveness of counsel, and in responding, defendant raises again the peremptory challenge issue.

Defendant and two companions were walking home at an early morning hour after drinking at a neighborhood bar. A gun that defendant was carrying accidentally discharged twice, apparently as he was shifting it in his clothing. Police nearby heard the shots and headed for the three, as they were the only ones on the street at this late hour. When defendant began to run, the police gave chase, and a subsequent frisk yielded the gun.

Defendant's two companions were called as defense witnesses at a *Huntley* hearing and at trial. The purpose of calling these witnesses was to attack the credibility of police testimony as to the manner in which defendant had been chased and apprehended. The tactic failed. Whatever discre-

.pancies brought out in the police testimony did not shake its major thrust, that a policeman had pursued defendant, overtaken him and recovered a gun after frisking him. Indeed, both defense witnesses testified substantially to the same effect. Obviously, defendant could not testify as his own witness at the trial. He had admitted possession of the gun at the suppression hearing. The Trial Judge set aside the verdict on the ground that after impeaching the People's witnesses on a number of incidental details, defense counsel blundered by calling defendant's two friends to the stand to give testimony which ended up "provid[ing] enough evidence to convict the defendant."

Our reading of the testimony leads to a contrary conclusion. The discrepancies brought out in the cross-examination of the People's witnesses had to do with which policeman had pursued, overtaken and fruitfully searched defendant. This was designed to shake the credibility of the police testimony. This was also the purpose of calling defendant's friends as witnesses, although they also inculpated defendant by confirming his possession of the gun. However, as noted, this had already been conceded by defendant in his own testimony at the *Huntley* hearing, where defendant had been represented by other counsel. Defendant there had testified that he worked as a parking lot attendant, and carried a gun on the job because he was in the practice of handling receipts. On this particular occasion he had forgotten to leave the gun behind when he finished his work.

Under these circumstances, presented with physical evidence and the testimony of the police as to how the gun had been acquired, defense counsel made a tactical decision to try to challenge the credibility of the prosecution's case with the aid of the testimony of the two friends who had earlier testified at the *Huntley* hearing. While the tactic was unsuccessful, this cannot be considered ineffectiveness of counsel under the facts of this case. It is clear that even had the defense presented no witnesses, the minor discrepancies brought out in the cross-examination of the police witnesses went only to which officer had made the arrest, and would not have been sufficient to affect the ultimate verdict in the People's favor. Thus, the testimony of defendant's friends at trial cannot be considered to have prejudiced the defense case *(see, Strickland v Washington,* 466 US 668). The standard of "reasonable competence" was met under the circumstances of

this case *(People v Baldi,* 54 NY2d 137, 146-147; *People v Natal,* 102 AD2d 496, 502, *affd* 66 NY2d 802).

■ Defendant further contends that he was denied a fair trial by a jury of his peers, by the prosecution's systematic use of the peremptory challenge to exclude all blacks from the jury. It is well established that no reason need be given for objecting peremptorily to a prospective juror (CPL 270.25 [1]).

The Supreme Court has held that exercise of the peremptory challenge is permitted for the purpose of excluding a prospective juror for any "real or imagined partiality" *(Swain v Alabama,* 380 US 202, 220). There is a presumption that peremptory challenges are made in good faith, and not to exclude prospective jurors solely on racial grounds *(People v McCray,* 57 NY2d 542, *cert denied* 461 US 961). Following *McCray,* the Court of Appeals has held that no inquiry of the prosecutor to disclose his reasons in a particular case is required in the absence of evidence of "systematic exclusion" *(People v Charles,* 61 NY2d 321, 329). In the Federal habeas corpus proceeding flowing from *McCray (supra),* a hearing was directed by a divided appeals court because it was concluded that there was a prima facie showing of discriminatory use of the challenge *(McCray v Abrams,* 750 F2d 1113, 1133, *petition for cert pending [see, — US —, 105 S Ct 2318]).* However, it was still held that the burden is on the defense to rebut the presumption and establish the substantial likelihood that the peremptory challenges were racially based. No hearing has been held, pending Supreme Court action.

The question of racially based peremptory challenges is now under reconsideration before the Supreme Court in *Batson v Kentucky (cert granted — US —,* 105 S Ct 2111, argued in Dec. 1985).

Defendant argues that a substantial likelihood of a systematic pattern of exclusion of minorities was established by showing that the jury selection panel had a total of only six blacks and Hispanics to begin with, and all were excused through the use of the two challenges for cause and four peremptory challenges. However, the record also indicates that the prosecution used four other peremptory challenges to excuse whites. Two Hispanics sat on the jury that ultimately heard the case.

The facts as to composition of the jury panel and the use of peremptory challenges are almost the same as those in *People v Charles (supra),* where it was held that there was no evi-

dence of "systematic exclusion" requiring a hearing (61 NY2d, at p 329). Defendant has failed to meet his burden of establishing the substantial likelihood of a pattern of systematic exclusion of minorities from a jury of his peers by the use of peremptory challenges.

Accordingly, the order of Supreme Court, New York County (Livingston L. Wingate, J.), entered February 14, 1985, setting aside the jury verdict which had convicted defendant of criminal possession of a weapon in the third degree, should be reversed, on the law and the facts, the verdict reinstated, and the action remanded for appropriate proceedings to impose sentence on defendant.

KUPFERMAN, J. P., SANDLER, CARRO and MILONAS, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 14, 1985, unanimously reversed, on the law and the facts, the verdict reinstated, and the action remanded for appropriate proceedings to impose sentence on defendant.