OPINION OF THE COURT
Michael R. Juviler, J.
I. THE QUESTION PRESENTED
In Batson v Kentucky (476 US 79 [1986]), the Supreme Court of the United States reaffirmed that the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor at a criminal trial from using peremptory challenges to exclude black potential jurors solely on the basis of race or on the assumption that black jurors will be unable to consider impartially the State’s case against a black defendant; reversing Swain v Alabama (380 US 202), the court held that a defendant can establish a prima facie case of purposeful discrimination solely on evidence concerning the prosecutor’s exercise of peremptory challenges at the defendant’s trial. If a prima facie case is made out, the prosecution has the burden of showing racially neutral reasons for excluding the black jurors. Batson expressly left open the question whether these rules apply to the defense. This court must now decide that question.
The defendant has been charged with two counts of murder in the second degree: intentional murder and depraved-indifference murder. The charges arose out of an incident that happened on the early morning of May 28, 1986, in the Coney Island section of Brooklyn. The People allege that the defendant and three other white youths, acting in concert, got into an argument with a black youth, who fled on his bicycle, and that they followed him in cars, shouted racial slurs, and assaulted him with fists, feet, a knife, and a baseball bat, causing his death.
Selection of the jury is scheduled to begin on March 14. The prosecution has asked the court to prohibit the defense from using peremptory challenges against black persons on the jury panel solely because of their race, and to require the defense to establish a racially neutral reason for excluding blacks if a pattern of discrimination appears. The defendant maintains that because his lawyer is not an agent of the State like the prosecutor, counsel should be allowed to use peremptory challenges without any restrictions or explanations, in accordance with CPL 270.25, which provides that a peremptory challenge is "an objection to a prospective juror for which no reason *1058 need be assigned. Upon any peremptory challenge, the court must exclude the person challenged from service.” To avoid delay during the selection of the jury, the issue is being litigated before the trial.
II. BACKGROUND — THE LAW OF NEW YORK
In People v McCray (57 NY2d 542 [1982], cert denied sub nom. McCray v New York, 461 US 961), the Court of Appeals, in reliance on Swain v Alabama (supra) and the language and history of CPL 270.25, held that the prosecution may not be made to explain its reasons for excluding minority jurors in a particular case. In McCray v Abrams (750 F2d 1113 [2d Cir 1984], vacated and remanded 478 US 1001 [1986], appeal dismissed 2d Cir, Oct 23, 1986, No. 84-2026), the United States Court of Appeals held in the same case that the prosecutor’s use of peremptory challenges at one trial to exclude minority jurors violated the defendant’s Sixth Amendment right of the accused to an impartial jury and his right to equal protection of the laws, and that the prosecutor should have been required to give an explanation for exercising peremptory challenges in an apparently discriminatory manner.
Batson (supra) resolved the conflict between these two decisions and nullified CPL 270.25 as it applies to prosecutors in those circumstances. The specific question that this court must now address is whether in the absence of legislative amendment the court may go beyond the language of the CPL as it applies to the defense.[1]
I find that the rules applicable to the prosecution should be applied to the defense. In doing so I am guided by decisions to that effect in other jurisdictions, the reasoning of Batson *1059 (supra) and other decisions of the Supreme Court of the United States, the public policy of New York against racial discrimination in the selection of juries, and the right of each side in a criminal trial in this State to an impartial jury drawn from a representative panel.
III. DECISIONS IN OTHER JURISDICTIONS
Virtually every court that has examined the issue has held that any restrictions on using peremptory challenges to exclude jurors of a certain race should apply equally to the prosecution and the defense. (See, Commonwealth v Soares, 377 Mass 461, 387 NE2d 499, cert denied 444 US 881; Commonwealth v Hutchinson, 395 Mass 568, 481 NE2d 188; Commonwealth v Reid, 384 Mass 247, 424 NE2d 495; State v Neil, 457 So 2d 481 [Fia]; People v Wheeler, 22 Cal 3d 258, 583 P2d 748.) These decisions, all rendered before Batson (supra), were based on the respective State Constitutions and statutes. A United States Court of Appeals based the same result on the Sixth Amendment right to an impartial jury. (See, Booker v Jabe, 775 F2d 762 [6th Cir], vacated sub nom. Michigan v Booker, 478 US 1001, upon remand 801 F2d 871, cert denied — US —, 107 S Ct 910.)
Since Batson (supra), courts in at least three other jurisdictions have addressed this issue. In State v Gilmore (103 NJ 508, 511 A2d 1150), the court relied on the New Jersey Constitution in holding that the prosecutor could not use peremptory challenges to remove jurors because of "presumed group bias” and strongly suggested that the same result would apply to the defense; subsequently, a trial court applied the restriction to the defense. (See, State v Alvarado, 221 NJ Super 324, 534 A2d 440 [Super Ct, Union County].) In Chew v State (71 Md App 681, 527 A2d 332, cert granted 311 Md 301, 534 A2d 369), a court of appeals in Maryland remanded the case to the trial court for a ruling on the prosecutor’s use of peremptory challenges, and in a thorough opinion indicated that the ruling in Batson (supra) logically would apply to both sides.
In a rare departure from this trend, a trial court in Alabama, at a trial of two leaders of the Klu Klux Klan for the murder of a black teen-ager, denied the prosecutor’s motion to prohibit the defense from exercising peremptory challenges in a racially discriminatory manner. (See, NY Times, Feb. 2, 1988, at 19, col 5.)
*1060 IV. THE RATIONALE OF BATSON AND SIMILAR CASES, AND THE PUBLIC POLICIES OF NEW YORK STATE
Although peremptory challenges existed at common law and have been traditionally considered a necessary part of a jury trial, they do not have a constitutional foundation. (See, Batson v Kentucky, 476 US 79, supra; Hayes v Missouri, 120 US 68; United States v Wood, 299 US 123; Walter v People, 32 NY2d 147; People v Lobel, 298 NY 243; People v Doran, 246 NY 409; People v Thompson, 79 AD2d 87 [2d Dept].) They are to be distinguished from challenges for cause, which are inherent in due process and the guarantee of a fair and impartial jury.
In New York, defendants had no right to peremptory challenges until 1873. (See, People v Thompson, supra.) Currently, CPL 270.25 limits the number of peremptory challenges, depending on the seriousness of the crime charged, and compels multiple defendants to share and agree on their challenges. Peremptory challenges by the defense may be regulated reasonably without violating a defendant’s constitutional rights, and their exercise by the defense may have to yield to more compelling public interests. In the absence of resolution by the Legislature since Batson (supra), the weighing of these interests must be undertaken by the courts.

A. Public confidence in justice

In its decision in Batson (supra) regarding discrimination by prosecutors, the Supreme Court of the United States cited reasons that apply equally to discrimination by the defense. One of them is the interest of the courts in preserving public confidence in justice: "By requiring trial courts to be sensitive to the racially discriminatory use of peremptory challenges, our decision enforces the mandate of equal protection and furthers the ends of justice. In view of the heterogeneous population of our Nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race.” (476 US, supra, at 99.) The court found that the injury from discrimination in the selection of the jury affects "the entire community. Selection procedures that purposely exclude black persons from juries undermine public confidence in the fairness of our system of justice.” (Supra, at 87.) In Allen v Hardy (478 US 255, 259), a case dealing with the retroactivity of Batson, the court said: "Our holding [in Batson *1061 v Kentucky, supra] * * * strengthens public confidence in the administration of justice.”
The court had recognized the same values before Batson (supra). In Rose v Mitchell (443 US 545), for example, the court had found: "Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process.” (Supra, at 555-556; see also, Booker v Jabe, supra, at 772.)
The Supreme Court of California reached a similar conclusion in People v Wheeler (supra, 22 Cal 3d, at 282, n 29, 583 P2d, at 765), regarding the situation at issue here, exclusion of black jurors by a white defendant: "[W]hen a white defendant is charged with a crime against a black victim, the black community as a whole has a legitimate interest in participating in the trial proceeding; that interest will be defeated if the prosecutor does not have the power to thwart any defense attempt to strike all blacks from the jury on the ground of group bias alone.”

B. The rights of minority jurors

The rights protected in Batson (supra) included not only the right of the defendant to equal protection and the "right” of the public to a judicial system that is just and has the appearance of justice, but the rights of the excluded jurors. "The harm from discriminatory jury selection,” said the court, includes "that inflicted on * * * the excluded juror”. (Batson v Kentucky, supra, at 87; Allen v Hardy, supra, 478 US, at 259; see also, Carter v Jury Commn., 396 US 320, 329 ["People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion.”])
It is therefore evident that while Batson (supra) was decided on review of a criminal conviction requested by the defendant, the decision involves not only the State in relation to a defendant, but the historic judicial goal of eliminating racial discrimination in the administration of justice.
As the court said in Rose v Mitchell (supra): "It is clear from the earliest cases applying the Equal Protection Clause in the context of racial discrimination in the selection of a grand jury, that the Court from the first was concerned with the broad aspects of racial discrimination that the Equal *1062 Protection Clause was designed to eradicate, and with the fundamental social values the Fourteenth Amendment was adopted to protect, even though it addressed the issue in the context of reviewing an individual criminal conviction.” (443 US, at 555.) The same principle applies to racial discrimination by the defense in the selection of a petit jury.
The defendant notes that the Fourteenth Amendment ("nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws” [US Const 14th Amend]) applies only to discrimination by the "State”, while this case deals with the exercise of peremptory challenges by a private defense lawyer. But the pervasive involvement of the officers of the Unified Court System of the State of New York and other officials of government in implementing racially motivated challenges by the defense is the kind of "State action” barred by the Amendment. (See, Lugar v Edmondson Oil Co., 457 US 922, 927.) "Private discrimination may violate equal protection of the law when accompanied by State participation in, facilitation of, and, in some cases, acquiescence in the discrimination”. (Matter of Wilson, 59 NY2d 461, 476.)
All three of those actions — participation, facilitation, and acquiescence — are involved here. The prospective jurors are summoned to appear for jury duty by the County Clerk or Commissioner of Jurors. The summonses are backed by the coercive power of government. The jurors are called by public officials to participate in a trial that is conducted in a public courtroom in a public building. The Judge, with the aid of the court personnel, controls and guides the jury selection. The State Legislature empowers the defense to exclude jurors without giving a reason, and the same law facilitates discrimination, albeit inadvertently, by requiring that these challenges be exercised out of the presence of the jury panel. When the clerk asks the defendant to exercise peremptory challenges, defense counsel — an officer of the court and a member of the Bar established by the State, whose profession is regulated by the courts — calls the jurors’ names or numbers out, and the Judge accepts the challenges. Then in open court the Judge or clerk orders the excluded jurors to leave, and they are guided out of the room by uniformed court officers or Deputy Sheriffs. The jurors perceive the Judge as the person who is responsible for the conduct of the trial, and although they do not know whether the prosecutor, the defense lawyer, *1063 or the Judge is rejecting them, they do know that officials of the State are telling them to leave. Under these circumstances, if all the black jurors — say, 9 or 10 — were asked to leave but only 1 or 2 whites out of a dozen were excluded, a perception that the court was engaging in discrimination would be reasonable. If a black juror so excluded were to stop at a privately owned coffee shop in the lobby of the courthouse and were denied service because of his race, "State action” would be found. (See, Burton v Wilmington Parking Auth., 365 US 715.) The same finding applies to racially motivated exclusion of the juror from the trial.
In Shelley v Kraemer (334 US 1), the court held that enforcement by a State court of a racially restrictive covenant in a private deed violated equal protection. The court’s reasoning covers the present case as well: "The judicial action * * * bears the clear and unmistakable imprimatur of the State. We have noted that previous decisions of this Court have established the proposition that judicial action is not immunized from the operation of the Fourteenth Amendment simply because it is taken pursuant to the state’s common-law policy. Nor is the Amendment ineffective simply because the particular pattern of discrimination, which the State has enforced, was defined initially by the terms of a private agreement. State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to exertions of state power in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this Court to enforce the constitutional commands.” (Supra, at 20.)
Acquiescence by a New York Judge in patent discrimination against jurors by the defense because of race also would violate the jurors’ right of equal protection under the New York Constitution; and discrimination by the defense would itself be in violation of that Constitution, as the Constitution is implemented by the Civil Rights Law. NY Constitution, article I, § 11 provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.” One of these "civil rights” is the right to serve on a jury without discrimination because of race: "No citizen of the state possessing all other qualifications which are or may be required or pre *1064 scribed by law, shall be disqualified to serve as a grand or petit jury in any court of this state on account of race, creed, color, national origin or sex”. (Civil Rights Law § 13; see also, Judiciary Law § 500; Civil Rights Law § 40-c [2].)
Other public laws, not applicable here, express the same strong public policy against racial discrimination. The State Human Rights Law (Executive Law art 15) forbids discrimination in employment, education, places of public accommodation, labor organizations, and housing. The New York City Human Rights Law outlaws discrimination in places of public accommodation, except clubs that are "distinctly private.” Recently the Court of Appeals upheld New York City’s Local Law No. 63 of 1984, which prescribes when a private club loses this exemption; the court held that the city’s compelling governmental interest in opposing discrimination warrants restricting the private right to association. (See, New York State Club Assn. v City of New York, 69 NY2d 211, appeal pending — US —.) Penal Law §§ 240.31 and 240.30, defining aggravated harassment, make it a crime to harass another person, or to destroy another’s property, because of the person’s race, color, religion, or national origin. All of these laws express a public policy against racial discrimination, whether public or private. This policy is so clear that private interests of defendants in excluding jurors of a certain race solely because of their race must yield to it.

C. Equal treatment of both parties in challenges, and the right of both sides to an impartial, representative jury

Since 1873, the prosecution and the defense at a criminal trial in New York have been granted the same number of peremptory challenges. For at least that period, challenges for cause have been the same for both sides. (See, People v Thompson, 79 AD2d 87 [2d Dept].) The historic intent of the Legislature to treat prosecution and defense alike in the selection of the jury would be violated if restraints against racial discrimination applied only to the prosecution.
In addition, Judiciary Law § 500 provides that "all litigants” shall have the right to grand and petit juries selected from a fair cross section of the community. One reason for this is to insure that both sides at a trial have the benefit of an impartial jury. It is well settled that the State has the right to a fair trial and to an impartial jury. (Singer v United States, 380 US 24.) In Hayes v Missouri (120 US 68, 70), the court noted that the defendant may not demand more than an *1065 impartial jury and that "impartiality requires not only freedom from any bias against the accused, but also [freedom] from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.” This balance would be destroyed if the defense alone could exercise peremptory challenges in a discriminatory manner while the prosecution was respecting the civil rights of the jurors and the defendant.
Drawing a jury from a representative cross section of the public also allows the jury’s deliberations to reflect the commonsense judgment of the entire community. As Mr. Justice Marshall stated for the court in Peters v Kiff (407 US 493, 503-504): "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.”
Mr. Justice Black’s compelling words in Smith v Texas (311 US 128, 130), almost half a century ago have the same force in the setting of this case: "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government.”
The requirement of a fair cross section of the community would be meaningless if the jury pool were representative of the community, but there were no fair possibility that the petit jury would be representative of the community. "No defendant has ever been tried before a venire; the venire is not the body that deliberates in the jury room; no defendant has ever been found guilty by a venire.” (McCray v Abrams, 750 F2d 1113, 1128, supra.)
V. REGULATION OF PEREMPTORY CHALLENGES
Until recently, it had been a long-standing policy in New York not to inquire into a lawyer’s reason for the use of a peremptory challenge. Our traditional view of trial advocacy *1066 had placed a high value on leaving this decision to the litigants and giving both parties complete discretion. This policy has been altered by the decisions in McCray v Abrams (supra) and Batson v Kentucky (supra), which establish that other public policies can outweigh the value of peremptory challenges.
Defense lawyers have argued that the restrictions imposed on the prosecution by Batson (supra) would impair their own ability to excuse jurors who have lingering biases. They argue that to establish grounds for a challenge for cause they will have to question jurors about racially sensitive issues and that this may alienate the jury against the lawyer’s side. The same fears were expressed on behalf of the States in McCray v Abrams (supra) and Batson v Kentucky, were discounted by the courts in those cases, and have not been borne out by experience since then.
Contrary to the defendant’s arguments in this case, there is no "due process” right to unexplained challenges; nor is there reason to believe that the voir dire in this case will produce a biased jury. The defendant’s prediction that limiting his peremptory challenges of black jurors could compel counsel to ask searching questions in order to establish grounds for a challenge for cause and that this could convince jurors that the defendant is a "racist” is pure speculation. Indeed, before the present issue was litigated, defense counsel had moved to have each prospective juror questioned on racial matters apart from the other jurors, because counsel intended to ask searching questions about race.
Defense lawyers have also maintained that requiring them to give racially neutral explanations for peremptory challenges would interfere with the communication between lawyer and client, compel disclosure of trial strategy, prevent the lawyer from honoring the client’s wishes to exclude a particular juror, and violate the attorney-client privilege, thereby infringing on the defendant’s Sixth Amendment right to the assistance of counsel. Some of these concerns may be reasonable, but they do not justify discriminatory practices in the selection of jurors or entitle the defense to an unfair advantage over the prosecution. Nor would requiring a lawyer to give a racially neutral reason for excusing a juror force the lawyer to disclose a confidence. But if it did, that disclosure would be justified. (See, People v Green, 135 AD2d 565 [2d *1067 Dept] [attorney-client privilege not violated when defense counsel was required to state whether his client had told him about a statement, because the privilege was waived by the defendant’s motion for a new trial].) Moreover, a lawyer may not follow a client’s instruction if it is unlawful or against public policy.[2]
The defendant’s fear of revealing his trial strategy if he has to explain peremptory challenges is baseless. Furthermore, a defendant may be compelled to reveal his trial strategy in order to promote justice. (See, People v Copicotto, 50 NY2d 222 [reciprocal discovery]; Williams v Florida, 399 US 78; People v Peterson, 96 AD2d 871 [2d Dept] [notice of alibi].)
Despite the concerns of the defense Bar, even under this ruling peremptory challenges remain substantially unfettered, because both parties still can use secret, arbitrary reasons for excluding jurors, except in the rare instance when that use conflicts with interests protected by the Federal and State Constitutions. And, as the People have appropriately conceded in oral argument, a particular black juror’s experiences or his feelings about race can be considered a "neutral” explanation for using a peremptory challenge, particularly in a racially charged case.
The ethical problem created by a Judge’s carrying out or tacitly accepting racial discrimination by one of the parties is clearer and more serious than the ethical dilemma of the defense lawyer. "A judge shall respect and comply with the law and shall conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” (Rules of Chief Administrator of the Courts, Rules Governing Judicial Conduct, 22 NYCRR 100.2 [a].) I cannot adhere to that standard and accept a *1068 pattern of racial discrimination in the selection of the jury by either side.
Therefore, if the People establish a prima facie case of exclusion of jurors because of race by the defense, the court will require the defense to establish that the challenges were not motivated by race.

. The only published decision in New York on this issue has been in the "Howard Beach” case; Mr. Justice Demakos, citing the "reasoning” of Batson v Kentucky (476 US 79), applied Batson to the defense. (See, People v Kern, NYLJ Sept. 22, 1987, at 3, col 3 [Sup Ct, Queens County].) When the defense brought a CPLR article 78 petition to prohibit enforcement of that decision, the Appellate Division did not rule on the merits and dismissed the petition, holding that because the issue would be resolved on appeal if there was a conviction, a writ of prohibition was not an available remedy. (Ladone v Demakos, 133 AD2d 435 [2d Dept].) An appeal from the conviction is pending.
There is also pending a suit brought by the District Attorney of Kings County to require the Justices of the Supreme Court in Kings County to apply Batson (supra) to the defense. (See, Holtzman v Supreme Ct. [transferred to Sup Ct, Westchester County].)

. "A lawyer shall not [e]ngage in conduct that is prejudicial to the administration of justice.” (Code of Professional Responsibility DR 1-102 [A] [5].)
"The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously within the bounds of the law”. (Code of Professional Responsibility EC 7-1.)
"Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.” (Code of Professional Responsibility EC 9-1.)