Titone, J.
(concurring). I am in complete agreement with and wholeheartedly join in the majority opinion by Judge Bellacosa. In addition, the posture in which the Batson question is presented here prompts me to set forth my own, strongly held beliefs on the subject of post -Batson peremptory challenges.
In his concurrence in Batson v Kentucky (476 US 79, 102-108), Justice Marshall made the observation that the potential for racial discrimination is inherent in the very notion of a system of juror challenges that need not be explained. He further noted that a prosecutor’s seemingly neutral verbiage explaining his use of peremptories can easily mask an underlying racist animus, whether conscious or unconscious, adding another layer of complexity to the trial court’s task of assessing the propriety of the proffered explanation.
Justice Marshall’s comments highlight for me the very profound difficulties involved in reconciling a juror challenge system that is theoretically based on the attorney’s inexplicable personal hunch with a constitutional rule that requires *359 attorneys to offer satisfactory "neutral” explanations for their choices. The mandated inquiry, as it is conceived in both the majority and the dissenting opinions, entails an analysis that looks beyond the prosecutor’s stated explanation in certain instances, and considers the prosecutor’s subjective motivations and state of mind. The inquiry thus renders what was originally to be a matter of unexplained choice into an exploration that is in some respects more complex, and certainly more intrusive, than the objective inquiry involved in resolving juror challenges for cause. Moreover, because, as the dissenter notes, racist motives are easily concealed, there is no assurance that even an in-depth inquiry will be effective in eradicating racial bias in the jury selection process.
The Supreme Court’s decision in Batson was a welcome, necessary and important judicial statement that racial bias and racist motivations have no place in our American courtrooms. In the final analysis, however, the most significant development to come out of Batson may well lie in Justice Marshall’s observation that "only by banning peremptories entirely can such discrimination be ended.” (476 US, at 108.) Even Batson, as Justice Marshall noted, permits a degree of discrimination by establishing a threshold test for a prima facie case that tolerates some number of unexplained ethnically targeted challenges (476 US, at 105 ["(p)rosecutors are left free to discriminate * * * provided that they hold that discrimination to an 'acceptable level’ ”]). Manifestly, an institution that furnishes the opportunity for racial discrimination, at any level, is — and will continue to be — highly problematic in a society that has grown increasingly intolerant of judgments made on the basis of stereotyping in any form.
At this point in the evolution of this legal issue, I suspect that rather than developing a complex set of judicially imposed limitations and standards, the most constructive course would be for the Legislature to take a hard look at the existing peremptory system with a view toward determining whether it is still viable, at least as it is presently constituted.* Whether or not Justice Marshall was correct in his assumption that the historic institution of peremptory challenges simply cannot be purged of its potential for discrimina *360 tory practices, it has become increasingly clear that judicial efforts to accomplish that goal can lead only to new layers of inquiry and complex tests that are fundamentally incompatible with the institution’s basic premise (see, People v McCray, 57 NY2d 542, 545-549). While such efforts can and must continue to be made, it seems to me that the time is fast approaching for the Legislature to rethink its policy choices in this highly sensitive area of law.

 It may well be that a system with a drastically reduced number of peremptories for each side would adequately serve the essential purpose of permitting some unexplained juror challenges (see, People v McCray, 57 NY2d 542, 547-549), while at the same time minimizing the opportunity for and incentives to engage in purposeful discrimination.