OPINION OF THE COURT
Simons, J.
Defendant, a black prostitute, was charged with murdering and robbing a white customer, a retired Rochester police officer. She claimed at trial that she acted in self-defense when decedent attacked her with a knife because she failed to satisfy him. The jury found her guilty of manslaughter, first degree, and grand larceny, third degree, and the court sentenced her to a 7- to 21-year prison term on the manslaughter count with a lesser concurrent sentence for the larceny.
Defendant contends the conviction may not stand because at trial her counsel established an unrebutted prima facie case that the prosecution had used its peremptory challenges to systematically exclude blacks from the jury for discriminatory purposes (see, Batson v Kentucky, 476 US 79). We agree and, therefore, reverse the order of the Appellate Division.
I
At the time of defendant’s trial and appeal to the Appellate Division, the applicable law on the use of peremptory challenges for discriminatory purposes was found in Swain v Alabama (380 US 202). In Swain, the Supreme Court held that prosecutors are presumed to exercise their peremptory *423 challenges in a nondiscriminatory manner and that the presumption is not overcome by establishing that the prosecutor excluded persons of defendant’s race from defendant’s petit jury. The presumption could only be rebutted if the accused established the prosecution systematically excluded minorities from juries over a period of time. We followed the Swain rationale in People v McCray (57 NY2d 542).
While defendant’s appeal was pending before this court, the Supreme Court reexamined the Swain rule in Batson v Kentucky (476 US 79, supra), and recognized that the rule was placing a crippling burden on defendants and rendering the use of peremptory challenges for discriminatory purposes immune from attack. Accordingly, the court overruled Swain in part, holding that a finding of purposeful discrimination could be based solely upon the prosecutor’s exclusion of racial minorities in a single case. Under Batson, to establish prima facie that the prosecutor discriminated in selecting the jury, a defendant must show (1) that he or she is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove venire members of defendant’s race from the jury and (2) facts and other relevant circumstances sufficient to raise an inference that the peremptory challenges were used for discriminatory purposes. Defendant, in establishing a prima facie case, may also rely on the proposition that peremptory challenges permit discrimination by those inclined to discriminate. Once defendant makes a prima facie showing of discrimination, the burden shifts to the prosecution to come forward with a neutral explanation for the use of its challenges. The prosecution cannot rebut defendant’s prima facie case, however, by merely alleging its good faith or by a claim that the stricken jurors would be biased because they shared the defendant’s race (id., 476 US, at 96-98).
In Griffith v Kentucky (479 US 314), the Supreme Court declared that Batson applied retroactively to all pending direct appeals (cf., People v Ford, 69 NY2d 775).
II
With this legal background we turn now to the facts in defendant’s case. After the jury was empaneled but before the trial commenced, defense counsel moved for a mistrial contending the prosecution used its peremptory challenges to systematically exclude blacks from the jury. There is no *424 transcript of the voir dire, but the facts on which defendant relied are set forth extensively in the colloquy before the court during defendant’s motion.
The venire of potential jurors for defendant’s trial contained five blacks. The prosecutor excluded all five from the petit jury by exercising peremptory challenges. In moving for a mistrial, defense counsel noted that "if they were white, [they] would be the exact type of people that any District Attorney would want to have on [his] jury, and they have been * * * excluded [solely because of] the color of their skin.” He then recited the background of each black juror, stating that the first one excluded by the trial assistant had "attended two colleges” and was a "very articulate man”; he had strong religious affiliations and was employed as a bus driver. The second juror peremptorily struck by the prosecutor was a woman who was a college graduate and presently teaching nursery school. Counsel described both of these prospective jurors as "exhibiting absolutely no prejudices one way or the other.”
Defense counsel voiced even stronger objections to the prosecutor’s strike of the third, fourth and fifth prospective black jurors. The third black member of the venire was a woman who had relatives on the Rochester police force. Puzzled by the trial assistant’s decision to exclude her, defendant’s lawyer noted she was the type of juror a defense attorney — not the prosecutor — would want stricken from the jury in a case where the victim was a retired police officer. The fourth prospective black juror, a woman, was a college graduate who worked at the Rochester Psychiatric Center. Her brother-in-law had been "killed as the result of an assault.” Defense counsel suggested that any bias she might have would favor the victims of violent crime, and thus the prosecution, not the defendant. The fifth black juror removed by the prosecutor was a woman who had graduated from college and had two grown children who were college students. She worked as a school nurse, had been exposed to unfavorable pretrial publicity regarding the case and had several associations with Rochester police officers. Defense counsel maintained that if these three jurors were prejudiced in any way, they were "prosecution oriented.”
The People did not dispute counsel’s statements, offer additional facts, or try to explain the strikes. Rather, they contended the motion was untimely and that under the Swain-McCray rules the evidence of discrimination was insufficient.
*425 The trial court denied the motion, basing its ruling on our decision in People v McCray (57 NY2d 542, supra). The court noted, however, that if McCray had not superseded the Second Department’s decision in People v Thompson (79 AD2d 87), defendant "probably” had demonstrated enough to establish a prima facie case of discrimination. The Thompson decision held that under New York’s Constitution a finding of discrimination could be based upon the prosecutor’s conduct in a single case if a "substantial likelihood” existed that prospective jurors had been stricken solely because of their race. The Thompson "substantial likelihood” test placed a heavier burden on defendants than the "mere inference” test ultimately adopted in Batson.
¡II
Defendant’s mistrial motion, made after the jury was selected but prior to trial, was timely (see, Batson v Kentucky, supra, 476 US, at 82-83; People v James, 132 AD2d 932; People v Howard, 128 AD2d 804; People v. Hockett, 121 AD2d 878) and the court’s denial of it raises a question of law for this court, whether defendant’s claim of discrimination was sufficient under present rules.
Applying the Batson test to the facts of this appeal, defendant established a prima facie claim that the prosecution used its peremptory challenges to exclude blacks from her petit jury. First, defendant, a black woman, was charged with murdering and robbing a white man. There were five prospective black jurors on the venire and the prosecutor excluded them all from the jury by exercising peremptory challenges. Additionally, defendant showed that the blacks were a heterogeneous group which included different sexes, different occupations and different social backgrounds. None of the jurors exhibited signs of bias favoring defendant. To the contrary, their backgrounds and knowledge of the case suggested that any bias they might have would favor the prosecution. Under the circumstances, the prosecutor’s " 'pattern’ of strikes against black jurors [gave] rise to an inference of discrimination” (Batson v Kentucky, supra, 476 US, at 96-98), more specifically, the inference that he challenged the "potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State’s case against a black defendant” (id., 476 US, at 89-91). Indeed, as we read the transcript of the colloquy *426 before the trial court and the Judge’s comments about People v Thompson (79 AD2d 87, supra), it appears that he would, given the lighter burden required of defendants by present law, share our view.
Inasmuch as defendant has established a prima facie case of discrimination and the People have yet to proffer a neutral explanation for the manner in which the trial assistant exercised his peremptories, the conviction cannot be affirmed. Under different circumstances, we would remit the matter for a hearing at which the People could offer an explanation for the pattern of strikes against black members of the venire (see, Batson v Kentucky, supra, 476 US, at 100; see also, People v James, 132 AD2d 932, supra; People v Howard, 128 AD2d 804, supra; People v Hockett, 121 AD2d 878, supra; cf., People v Wilson, 126 AD2d 970). A hearing is inappropriate in this case, however, because of the absence of a record and the impossibility of securing one. Over four years have elapsed since defendant’s trial and the Judge who presided no longer sits in County Court. The memories of the other participants of this preliminary stage of the trial have undoubtedly faded and an accurate reconstruction of the untranscribed jury selection proceeding and reliable findings based upon the conduct of the voir dire is therefore virtually impossible (see, People v McCray, 57 NY2d 542, 556, n 5 [Meyer, J., dissenting], supra; see also, People v Thompson, 79 AD2d 87, 111, n 22, supra). The order of the Appellate Division must be reversed and the judgment of County Court vacated.
The indictment charged defendant with two counts of murder, second degree, two counts of robbery, first degree, and one count of grand larceny, third degree. She was acquitted of the robbery charges and convicted of manslaughter, first degree, as a lesser included charge of the murder charges, and grand larceny, third degree.
Accordingly, the order of the Appellate Division should be reversed, a new trial ordered on the grand larceny, third degree, charge, and the remaining counts of the indictment dismissed without prejudice to the People’s resubmission of the manslaughter charge to another Grand Jury if so advised *427 (see, People v Nieves, 67 NY2d 125, 136; People v Mayo, 48 NY2d 245, 253).
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.