James CASTON, Petitioner,

v.

Joseph COSTELLO, Superintendent,
Mid–State Correctional Facility,
Respondent.

No. 97CV7623 (ARR).

United States District Court,
E.D. New York.

Nov. 11, 1999.

William A. Loeb, Appellate Advocates, New York City, for petitioner.

Robin A. Forshaw, District Attorney's Office, Kew Gardens, NY, for respondent.

## OPINION AND ORDER

ROSS, District Judge.

On October 17, 1995, petitioner, James Caston, was convicted following a jury trial in New York Supreme Court, Queens County, of criminal sale of a controlled substance in the third degree in violation of N.Y.Penal Law § 220.39(1). He was sentenced to an indeterminate prison term of four to twelve years.

After exhausting direct appeals in state court, Caston petitioned this court on December 30, 1997 for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Caston claims that the trial court denied him the equal protection of law when, having found a prima facie showing of racial discrimination in the prosecutor's exercise of five

peremptory challenges, it then truncated the next stage of the inquiry required under *Batson v. State of Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, the court failed to require the prosecutor to provide race-neutral reasons for three of her five challenges.

Respondent opposes the petition on the ground that the Appellate Division, Second Department, expressly found that Caston was procedurally barred from advancing the claim. That finding, respondent argues, constitutes an adequate and independent state ground for the state court's decision, thereby precluding federal habeas review by this court.

As explained below, in this court's view, the state court's determination that Caston's federal Constitutional claim was procedurally defaulted does not have a "a 'fair and substantial basis' in state law," *Garcia v. Lewis,* 188 F.3d 71, 78 (2d Cir.1999) (quoting *Lawrence v. State Tax Comm'n,* 286 U.S. 276, 282, 52 S.Ct. 556, 558, 76 L.Ed. 1102 (1932)). The petition is therefore conditionally granted.

## BACKGROUND

 Under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), if a defendant establishes a prima facie case of discrimination in the exercise of peremptory challenges, the prosecutor has the burden of producing race-neutral explanations for the challenges. The trial court then determines whether the explanations are pretextual and whether the defendant has established intentional discrimination. *See id.* at 97–98, 106 S.Ct. at 1723–24. Questions concerning the timeliness of *Batson* objections are left to state law. *See Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991).

The jury selection in this case took place in two rounds. Eighteen members of the venire comprised the first panel. Each attorney questioned the prospective jurors on the panel. The judge then asked each attorney for challenges for cause and per-

emptory challenges as to the first twelve members of the panel, and then again as to venirepersons thirteen through eighteen. At the close of this first round, defense counsel raised a *Batson* claim based on the prosecutor's challenge of two of the black panel members. *See* Trial Tr. 162. The court ruled that, as of that time, defense counsel had failed to make out the necessary prima facie case. The panel was called back, the six jurors selected during that round were placed in the audience, and the remainder of that panel was dismissed. *See id.* at 164–65.

Another eighteen venirepersons were then seated for voir dire. After the second panel was questioned by both attorneys, it was excused for lunch. The judge then asked the attorneys for any challenges for cause and then for peremptory strikes as to the first six prospective jurors on that panel. The same procedure was employed for prospective jurors seven through nine, and the prosecutor peremptorily challenged number seven. Defense counsel pointed out that number seven was a black man, and that the prosecutor had also struck the only other black male available to that point on either panel. Thus, he renewed the *Batson* application:

> Since the People have also struck Miss Smyler, who is also an Afro–American female, and they have seemed to have used an inordinate amount of their strikes against Afro–Americans, I would ask for the People to give a neutral reason why Rodney Black was struck.

> He's employed. He seemed like he could be a fair juror. I would like the People to come up with some explanation.

*Id.* at 211. The court again concluded that a prima facie case had not yet been made out and declined to compel the prosecutor to articulate race-neutral reasons for her challenges. The next two venirepersons were considered, one of whom was selected. At that point, eleven jurors had been selected and one remained to be chosen.

When the prosecutor exercised a peremptory challenge against the next prospective juror, an African–American woman, defense counsel raised the *Batson* claim for the third time: "Your Honor, again, I would note that Grace Thomas is an Afro–American. She could be the 12th juror; her son is a police officer; she sat as a juror before. She would appear to be a qualified juror." *Id.* at 213. The court asked defense counsel to articulate the pattern suggesting discriminatory use of the peremptory challenges. Counsel explained that Thomas was the third African–American venireperson struck during the second round, and that two others had been peremptorily challenged during the first round. Five of the eight strikes used by the prosecutor had been against black members of the panels. *See id.* at 213–14.[1] The court agreed that a prima facie case had been established, and asked the People "to set forth reasons for their exercising their peremptory challenges." *Id.* at 214.

At that point, some confusion seems to have ensued as to the order in which the challenges should be explained. The court first directed the prosecutor to set forth the basis for her challenge to Aileen Smyler, who had been the first African–American venireperson struck during the second

round. Defense counsel then interposed: "Actually, I think it was Rodney Black, your Honor." *Id.* The court then told the prosecutor to start with Black, the second of the venirepersons struck during the second round, and she provided her explanation for that peremptory challenge.[2] When the prosecutor finished her explanation, the judge responded by saying: "Then the other person would be Grace Thomas." *Id.* at 215. The prosecutor explained her strike of Thomas and the court stated that it found the reasons acceptable.[3] *See id.* at 216. Following the court's ruling with respect to these two challenged jurors, defense counsel noted his exception, but did not ask for explanations as to the other three challenged African–Americans. Nor did the court require the prosecutor to provide those explanations. Instead, the judge resumed the selection of the twelfth juror, asking the prosecutor if she would challenge the next venireperson for cause. *See id.*

That prospective juror was not challenged by either attorney, thus filling the last seat on the jury. Immediately after she was selected, there was an off-the-record discussion, at the close of which defense counsel asked the court to direct the prosecution to provide the missing *Batson* explanations:[4]

---

1. The full text of defense counsel's third *Batson* application is as follows:

 Rodney Black was struck, Aileen Smyler was struck, Grace Thomas was struck; those are all Afro–Americans.

 In the first panel Martin King was struck, he was the only Afro–American male in that panel. He was struck and Sandra Bellamy was struck, also a female Afro–American.

 That is one, two, three, four, five, of the eight strikes that the People have used are Afro–Americans. The defendant is being deprived of a right to a jury of his peers among whom are Afro–Americans.

 The Afro–Americans also have their own constitutional right to sit as jurors in the case, unless the People have a good reason that can be articulated for striking, peremptorily striking such a juror. And they do have to give the Court some reason, I would submit.

 Trial Tr. 213–14.

2. The prosecutor explained that she was of the impression that Black believed that if a witness was nervous, that person was probably lying. She also said that she "didn't feel that [she] established a rapport with him," and that she "had to spoon-feed him" certain responses. *Id.* at 215.

3. Thomas had said that her nephew had been convicted of a drug offense five years earlier in Queens County, where Caston was being prosecuted. *See id.* at 216.

4. The entire transcript of the events that transpired between the end of the first discussion of the prosecution's explanations of its peremptory challenges and defense counsel's renewal of that inquiry is as follows:

 THE COURT: With regards to the person sitting in seat number 13, Yvonne Bundick, do the People have any challenge for cause?

Your Honor, I just wanted to state one other thing for the record.

Which is that some of the jurors have already been excused, with regard to my *Batson* application. The People don't only have to come up with race neutral reasons for two of them. Once the prima facie case has been made out it's my position they have to come up with all race neurtal [sic] reasons.

*Id.* at 217. The trial judge, however, dismissed this request, ruling that counsel had "waived that issue." *Id.* That determination may have been based in part on the fact that the first round venirepersons had already been dismissed, although the basis for the court's decision is unclear:

> THE COURT: You're rearguing after we moved on my position. You waived it.
>
> MR. DUFAULT [defense counsel]: I'm just making a record.
>
> THE COURT: You waived that issue. I can't bring people back now that have already been—
>
> MR. DUFAULT: Some of those people were already excused prior to the second panel being seated. They were in the first panel.
>
> THE COURT: You're continuing an argument that was finished so I'm saying you waived that.

*Id.* at 217–18. Thus, the court never required that the prosecutor give explanations for three of her peremptory strikes of African–American venirepersons.

> MS. LYNCH [the prosecutor]: No, your Honor.
> THE COURT: Does the defendant?
> MR. DUFAULT [defense counsel]: No.
> THE COURT: People have any peremptory challenges?
> MS. LYNCH: No, your Honor.
> THE COURT: Does the defense?
> MR. DUFAULT: Excuse me, Judge, would this be the 12th juror?
> THE COURT: Yes.
> MR. DUFAULT: No peremptory challenge.
> THE COURT: So we have our twelve jurors selected.
> Counsel, would you step up.

On appeal, the Appellate Division, Second Department, found Caston's *Batson* claim not to be preserved: "As the defendant did not promptly object when the court required the People to offer race-neutral explanations for only two of the five black venirepersons stricken by their peremptory challenges, his contention that the court should have requested explanations for the exclusion of all five black jurors is unpreserved for appellate review...." *People v. Caston*, 239 A.D.2d 355, 355, 657 N.Y.S.2d 979, 979 (2d Dep't 1997) (citing *People v. Font*, 223 A.D.2d 600, 637 N.Y.S.2d 16 (2d Dep't 1996)).[5] Caston sought leave to appeal to the Court of Appeals, arguing only that the trial court had erred in prematurely terminating the *Batson* inquiry. *See* Loeb Letter to Judge Wesley. The Court of Appeals denied leave to appeal on August 7, 1997. Caston subsequently filed the instant habeas petition raising the same claim.

## DISCUSSION

### I. State Procedural Default as an Adequate State Ground

■ Ordinarily, a state procedural bar constitutes an adequate and independent state ground for a state court's decision, blocking habeas review in the federal courts. *See Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991). The failure to object at trial and thereby preserve an issue for appeal is such a procedural bar and usually constitutes an adequate and independent

> (Whereupon, there was a discussion held at the bench, off the record, among the Court and both counsel.)
> *Id.* at 216–17. At that point, defense counsel again sought explanations for the peremptory challenges of the other three African–American venirepersons.

5. The Appellate Division also rejected Caston's claim that the trial court erred in not reading back a portion of the testimony to the jury during its deliberations, finding the error harmless. That claim is not relevant to this habeas petition.

state ground for the denial of the claim. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990). The mere invocation of a procedural bar does not, however, automatically preclude review in this court. Indeed, a federal court's "responsibility to ensure that the state rule is 'adequate' obligates [this court] to examine the basis for and application of state law." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999).

▬ The Second Circuit recently reaffirmed that a state court's finding of procedural default constitutes an "adequate" ground only "if there is a 'fair and substantial' basis in state law for the state court's determination." *Id.* at 78. The procedural rule must be "strictly or regularly followed." *Wedra v. Lefevre,* 988 F.2d 334, 339 (2d Cir.1993) (citing *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988)). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review" of a federal constitutional claim in federal court. *Ford v. Georgia,* 498 U.S. at 423–24, 111 S.Ct. at 857 (quoting *James v. Kentucky,* 466 U.S. 341, 348–51, 104 S.Ct. 1830, 1835–37, 80 L.Ed.2d 346 (1984)). States may not apply novel procedural rules to avoid federal claims, *see NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958) (holding that a novel state procedural requirement will not thwart federal review when the affected party had no notice of the rule), and must treat similar claims evenhandedly. *See Hathorn v. Lovorn,* 457 U.S. 255, 263, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982); *Andrews v. Deland,* 943 F.2d 1162, 1190 (10th Cir.1991). A reading of the cases also reveals that a procedural default will be deemed to have a "fair and ·substantial basis" in state law only if it serves a legitimate state interest. *See Smart v. Scully,* 787 F.2d 816, 820 (2d Cir.1986) (deeming a state procedural bar inadequate because the state had no substantial or legitimate interest in its application); *Silverstein v. Henderson,* 706

F.2d 361, 367 n. 11 (2d Cir.1983) (noting that a procedural default that is either unsupported or manipulative would not be an adequate state ground); *cf. Wainwright v. Sykes,* 433 U.S. 72, 88–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977) (finding Florida's contemporaneous objection rule to be an adequate state ground based on the important state interests it serves).

In analyzing whether a state procedural default has a fair and substantial basis in state law, then, the court considers whether litigants had notice of it, whether it is consistently applied in similar circumstances, and whether its application serves legitimate state interests.

### II. The Procedural Bar Invoked in Caston's Case

The procedural bar at issue in this case is New York's contemporaneous objection rule, codified at N.Y.Crim.Proc.Law § 470.05(2), which reads:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

This rule requires that the issue on appeal be "brought to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon,* 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737–38, 647 N.E.2d 1243, 1247–48 (1995).

### III. The Adequacy of the Procedural Bar

Caston does not contend that New York's contemporaneous objection rule is itself novel or that he did not have notice of it, as was the case in *Patterson,* 357 U.S. at 457–58, 78 S.Ct. 1163 at 1169, 2 L.Ed.2d 1488. Instead Caston argues, as did the

petitioner in *Garcia,* that New York's contemporaneous objection rule was misapplied in his case, and that its invocation was not the evenhanded application of a procedural bar required by *Hathorn,* 457 U.S. at 263, 102 S.Ct. at 2426. *See* Petitioner's Mem. of Law 13–14. This court agrees that the invocation of the contemporaneous objection rule to bar Caston's *Batson* claim was not consistent with the manner in which New York state courts typically apply the rule in similar situations.

## A. The Timeliness of the Objection

■ New York law is clear that *Batson* objections are timely when brought after jury selection but before the jury is sworn. *See People v. Harris,* 151 A.D.2d 961, 961, 542 N.Y.S.2d 411, 411 (4th Dep't 1989) (holding that for a *Batson* claim to be timely, "an objection must be made before the jury, or the last juror including alternates, is sworn."); *cf. People v. Scott,* 70 N.Y.2d 420, 425, 522 N.Y.S.2d 94, 97, 516 N.E.2d 1208, 1211 (1987) ("Defendant's mistrial motion, made after the jury was selected but prior to trial, was timely....").[6] Although the contemporaneous objection rule often bars *Batson* claims, it is regularly invoked only when those claims are raised after trial has begun or for the first time on appeal. *See, e.g., People v. Reeder,* 221 A.D.2d 666, 634 N.Y.S.2d 513 (2d Dep't 1995) (defense counsel never objected or moved for a mistrial); *People v. Barnes,* 198 A.D.2d 289, 603 N.Y.S.2d 172 (2d Dep't 1993) (defense counsel's first objection was after jury had been sworn, read preliminary instructions, and dismissed for the day); *People v. Campanella,* 176 A.D.2d 813, 575 N.Y.S.2d 137 (2d Dep't 1991) (defense counsel never requested a hearing nor moved for a mistrial); *People v. Steans,* 174 A.D.2d 582, 571 N.Y.S.2d 85 (2d Dep't

1991) (defense counsel never moved for mistrial); *People v. Rosado,* 166 A.D.2d 544, 560 N.Y.S.2d 825 (N.Y.A.D.1990) (defense counsel never formally objected or moved for a mistrial); *People v. Dunn,* 158 A.D.2d 941, 942, 551 N.Y.S.2d 432, 433 (4th Dep't 1990) (defense counsel first raised *Batson* claim after jury was sworn); *People v. Barber,* 156 A.D.2d 1022, 549 N.Y.S.2d 313 (4th Dep't 1989) (defense counsel objected after all jurors and alternates were sworn); *Epps v. Commissioner of Correctional Services,* 13 F.3d 615, 619 (2d Cir.1994) (describing "the unwavering New York practice of declining to consider jury selection claims unless presented at the time the jurors are chosen").

■ Caston renewed his objection to the truncated explanation phase of the inquiry before the jury was sworn. Indeed, because he renewed the objection while the second panel was still at lunch, the jurors who had been selected from the second panel had not yet even been notified that they would be serving on the jury. The only arguable defect in Caston's *Batson* challenge was the brief interlude between counsel's establishment of a prima facie *Batson* claim and his renewed objection to the absence of explanations for three of the peremptory strikes. The court is unable to discern any significance to that fact that would remove this case from the ambit of New York's general rule, under which a *Batson* objection is timely if raised before the jury is sworn.

Respondent argues that the delay between the court's acceptance of the prosecutor's two explanations in apparent satisfaction of her obligation under *Batson* and the renewed objection rendered the renewed objection untimely. Respondent's primary arguments in support of this position are that: 1) New York law requires a party to make all *Batson* objections during

---

6. The question more recently settled was not whether defendants *may* bring *Batson* claims after jury selection has been completed, but whether they *must* wait until the end of jury selection. *People v. Bolling,* 79 N.Y.2d 317,

321, 582 N.Y.S.2d 950, 953, 591 N.E.2d 1136, 1139 (1992) held that *Batson* claims need not be reserved until the end of jury selection but may be raised during that process.

one colloquy, and 2) the intervening selection of the twelfth juror limited the trial court's ability to correct any *Batson* violation. A review of New York law has convinced this court that these contentions are incorrect, and that Caston's objection was timely.

### 1. Respondent's Asserted "One Colloquy Rule"

According to respondent, Caston's objection was untimely though made prior to the jury being sworn because defense counsel did not protest the incomplete explanations at the time the inquiry was prematurely terminated. He argues that New York requires a party to raise all of the arguments on which its *Batson* claims relies during the first "*Batson* colloquy." The cases cited by respondent do not support this contention.

█ Rather than create a "one colloquy rule," respondent's authorities simply require that, consistent with the contemporaneous objection rule, a party must fully apprise the trial judge of the grounds for a *Batson* claim before that claim is heard on appeal. Respondent's asserted rule derives from *People v. Smith*, 81 N.Y.2d 875, 876, 597 N.Y.S.2d 633, 634, 613 N.E.2d 539, 540 (1993), which states that the proponent of a *Batson* claim must "articulate and develop all of the grounds supporting the claim, factual and legal, during the colloquy in which the objection is discussed." That case makes clear, however, that the *Batson* claim was rejected on appeal not because all grounds were not addressed in one colloquy, but because defense counsel first articulated on appeal the grounds for a potential finding of discrimination: "[D]efense counsel failed to set forth any facts or circumstances during the *Batson* colloquy from which the trial court could have inferred a purpose of discrimination. Defendant now argues for the first time that the prosecution's exclu-

sion of the two jurors ... indicates a purpose of discrimination." *Id.* Similarly, *People v. Childress*, 81 N.Y.2d 263, 268, 598 N.Y.S.2d 146, 149, 614 N.E.2d 709, 712 (1993), rejected a *Batson* claim because the defense counsel's "sketchy assertions" purporting to demonstrate a prima facie case were simply too vague. *Id.* The defendant's *Batson* claim failed in *Childress* not because the timing of the claim was wrong, but because defense counsel failed "to give the trial court a proper foundation to evaluate the claim." *Id.; see also People v. Lowe*, 234 A.D.2d 564, 564, 652 N.Y.S.2d 51, 52 (2d Dep't 1996) (denying a *Batson* claim because at the trial court the defendant had only noted the number of African–American venirepersons struck by the prosecutor without specifying other circumstances that might suggest discriminatory motive); *People v. Ramos*, 223 A.D.2d 565, 565, 636 N.Y.S.2d 394, 394 (2d Dep't 1996) (denying a *Batson* claim because defendant never articulated the claim to the trial court as one based on both race and gender, as he did on appeal); *People v. Vidal*, 212 A.D.2d 553, 554, 622 N.Y.S.2d 323, 324 (2d Dep't 1995) (denying a *Batson* claim on the same grounds as *Lowe* ); *People v. Stephens*, 84 N.Y.2d 990, 991–92 622 N.Y.S.2d 502, 503, 646 N.E.2d 804, 805 (1994) (denying a *Batson* claim because the defendant had not specified before the trial judge that the claim was based on both race and gender but had suggested that it was based on race alone). By requiring that grounds for the claim be specified "during the colloquy," these cases, cited by respondent as stating a "one colloquy rule," simply insist that the trial judge be presented with a full opportunity to consider the claim, and that new grounds not be articulated for the first time on appeal. They do not address the issue of *when* a *Batson* claim must be brought to the attention of the trial judge.[7]

---

7. Analyzed another way, these cases are concerned with *how* a *Batson* claim must be raised, not *when* it must be raised. The contemporaneous objection rule requires that the

issue on appeal be "brought to the attention of the trial court *at a time* and *in a way* that [gives] the latter the opportunity to remedy the problem and thereby avert reversible er-

Respondent also cites *People v. Font,* 223 A.D.2d 600, 637 N.Y.S.2d 16 (2d Dep't 1996), the case relied on by the Appellate Division, as support for his "one colloquy rule." *Font,* however, merely implements the *Smith–Childress* rule requiring that *Batson* claims be presented to the trial judge in the first instance, and is inapplicable to this case. In *Font,* as here, the prosecution provided explanations for only some of the potential jurors it challenged and the defendant neglected to request the missing explanations. *See id.* at 600–01, 637 N.Y.S.2d at 17. In *Font,* however, unlike here, the defendant never requested that the trial judge solicit those explanations from the prosecutor. *See id.* at 601, 637 N.Y.S.2d at 17. The Appellate Division in *Font* consequently held the defendant's contention that the *Batson* inquiry was unfinished to be unpreserved. *See id.* Thus, *Font* simply applied the rule from *Smith* and *Childress* requiring that the *Batson* challenge be fully presented to the trial judge. In this case, defense counsel explicitly requested the explanations as to the other three venirepersons, indisputably meeting the burden imposed by *Smith* and *Childress.*[8]

In sum, the holding of respondent's cases, that a defendant must present the specific grounds for his *Batson* claim to the trial judge, is a logical application of § 470.05(2)'s contemporaneous objection rule. These cases do not hold, as respondent asserts, that all objections relating to a *Batson* claim must be raised in a single colloquy. Such a formalistic rule would fly in the face of the § 470.05(2), which de-

fines timeliness in terms of the availability of a remedy, particularly in light of the general New York rule that *Batson* remedies are available until the moment the jury is sworn. Because there is no "one colloquy rule" exception, the general rule directs that Caston's *Batson* objection was timely as it was raised before the jury was sworn.

2. The Availability of Remedies

■ Respondent also argues that, even in the absence of a "one colloquy rule" rendering the claim *per se* untimely, the objection was nevertheless untimely in this case because, due to the intervening selection of the twelfth juror, the error was no longer susceptible to correction by the trial judge. *See* Respondent's Mem. of Law 26 ("In the present case, the court could not effectively respond to petitioner's belated request for race-neutral explanations because petitioner did not make his request until after the twelfth juror had actually been selected."). Notwithstanding the general rule allowing *Batson* claims to be raised until the jury is sworn, this court would agree that defense counsel's delayed renewal of his *Batson* objection, though made before the jury was sworn, would be untimely if the delay had prevented the trial court from remedying the violation or had narrowed the range of remedies available. *See People v. Parks,* 210 A.D.2d 437, 437, 620 N.Y.S.2d 978, 978 (2d Dep't 1994) (finding a defendant's claim that the trial judge applied the wrong standard in considering a prosecutor's *Batson* explanations to be unpreserved "insofar as the

---

ror." *People v. Luperon,* 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 737–38, 647 N.E.2d 1243, 1247–48 (1995) (emphasis added). The central question in this case is whether the renewed objection was raised "at a time" that allowed the trial court to correct the problem. Respondent's cases, however, address whether defendants made their claims "in a way" that fully apprised the trial court of the grounds for the claims.

8. Defense counsel unambiguously asked the court to complete the second stage of the *Batson* inquiry, in which the prosecution ar-

ticulates any race-neutral explanations it has for its strikes:

> Your Honor, I just wanted to state one other thing for the record.
>
> Which is that some of the jurors have already been excused, with regard to my Batson application. The People don't only have to come up with race neutral reasons for two of them. Once the prima facie case has been made out it's my position they have to come up with all race neutral [sic] reasons.

Trial Tr. 217.

defendant failed to object on these grounds at a time that the court could have remedied the perceived error," citing § 470.05(2)). But it appears that the trial court had the identical remedies available to it at the time Caston's counsel objected to the unfinished explanations as the court did when it signaled its intention to terminate prematurely the *Batson* inquiry.

 While it is true that the jury was technically filled by the time the objection was lodged, the court finds no case suggesting that factor to be an obstacle to remedying a *Batson* violation. *Batson* itself recognized two appropriate remedies for a *Batson* violation: 1) the discharge of the venire and commencement anew of jury selection, and 2) the disallowance of the discriminatory challenges and resumption of the jury selection with those jurors reinstated to the venire. *See Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24. If reinstatement of the improperly challenged venirepersons is not possible because they have already been discharged, a court may call additional jurors to the venire and grant the defendant additional peremptory challenges. *See McCrory v. Henderson*, 82 F.3d 1243, 1247 (2d Cir. 1996).

 Respondent nonetheless argues that the selection of the twelfth juror presented a "compelling reason why the court could not ask the prosecutor to provide race-neutral reasons for the other three excluded prospective jurors." Respondent's Mem. of Law 26. In support of this position, respondent contends that the twelfth juror's state constitutional right to serve on the jury would have been infringed had she been displaced. *See id.* (citing New York caselaw and N.Y. Const. art. I, § 1). However, "no citizen has a right to sit on any particular petit jury." *People v. Kern*, 75 N.Y.2d 638, 652, 555 N.Y.S.2d 647, 654, 554 N.E.2d 1235, 1242 (1990). More importantly, there can be no rule of law requiring that the federal Constitutional right of a potential juror to be protected from racial discrimination in jury

selection be subordinated to the state law right of a juror to sit where the juror was selected due only to the prosecutor's discriminatory use of peremptory challenges. *See id.* at 652, 555 N.Y.S.2d at 655, 554 N.E.2d at 1243 (holding that the "opportunity for service on a petit jury is a privilege of citizenship which may not be denied our citizens solely on the basis of their race").

Indeed, since *Batson*'s promulgation, courts have recognized that, in order to remedy a *Batson* violation, it may be necessary to displace jurors already selected. As noted above, *Batson* itself allowed that jury selection may need to be begun anew with a fresh panel, necessarily depriving those jurors already selected of their opportunity to serve. *See Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24. *See also People v. Thompson*, 79 A.D.2d 87, 109–10, 435 N.Y.S.2d 739, 754–55 (2d Dep't 1981) (requiring a trial court to "dismiss the jurors thus far selected" after concluding that the prosecution had discriminated in its use of peremptory challenges). In addition to dismissing the entire venire, New York courts have allowed the removal of some, but not all, selected jurors to remedy a *Batson* violation. *People v. Frye*, 191 A.D.2d 581, 581–82, 595 N.Y.S.2d 84, 84–85 (2d Dep't 1993), upheld the dismissal of three jurors selected on the second day of jury selection, during which a *Batson* violation was established. As one New York court has explained, rather than being prohibited as respondent argues, the removal of seated jurors may be necessary to effectuate the purpose of *Batson*:

> Conceivably, if jurors are to assume the positions they would have had if there had been no discrimination, it could require removing from the panel jurors who had been selected before the *Batson–Kern* challenge was sustained. While one might consider this to be unfair, it would nevertheless be consistent with the underlying principle embodied by both *Batson* and *Kern*, to

prevent discrimination in the selection of a jury. . . .

*People v. Moten,* 159 Misc.2d 269, 281, 603 N.Y.S.2d 940, 947 (N.Y.Sup.1993).

In any event, even if the twelfth juror had not yet been chosen, it is possible that other previously selected jurors would have been displaced. Before the selection of the twelfth juror, there were three challenged venirepersons for whom explanations were wanting and one seat remaining. Thus, had the *Batson* colloquy been concluded before the last juror was selected and had the court sustained two or three of defense counsel's challenges to the prosecutor's peremptory strikes, the tenth and eleventh jurors, who had already been selected but not notified of their selection, may have been removed from the jury, or all selected jurors would have been dismissed and the process begun anew.

Respondent also raises the spectre of manipulation and "sandbagging." This concern is sometimes cited as a rationale for application of the contemporaneous objection rule in the *Batson* context, but generally when the claim is first raised after the trial has begun. *See McCrory,* 82 F.3d at 1247 ("If . . . a *Batson* objection may be raised after the jury has been sworn and trial has begun, there can be no remedy short of aborting the trial. This would permit the defendant to manipulate the system to the extreme prejudice of the prosecution and give the defendant a strong inducement to delay raising the objection until trial is underway."). But when, as here, the objection is raised during the jury selection process, even if late, the risk of manipulation would appear to be small. The very remedies discussed in

*McCrory* as no longer available once trial has begun—disallowance of abusive challenges, the addition of jurors to the venire and granting of additional challenges to the defendant, or a new jury selection from a different panel, *see McCrory,* 82 F.3d at 1247—were still available when Caston's counsel renewed his request that the prosecutor provide the missing race-neutral explanations.

Respondent argues, however, that the risk of sandbagging and manipulation exists even during jury selection. Respondent contends that allowing a defendant to delay a *Batson* claim arising out of early peremptory challenges until after challenged jurors are dismissed "would make it extremely difficult for the court and the prosecutor to remember many of the details regarding the stricken jurors," Respondent's Mem. of Law 31, and "cause all of the jurors who were the subject of the *Batson* challenge to be unavailable at the time the objection was finally raised." *Id.* at 29–30. Alternatively, cautions respondent, a defendant could, as in this case, dupe the trial court into believing that a timely *Batson* claim had been abandoned only to resurrect it later when he concludes the jury is not composed to his liking.[9] *See id.* at 32 (citing *Brewer v. Marshall,* 119 F.3d 993, 1002 n. 13 (1st Cir.1997) (noting that defendant might delay a *Batson* objection to allow the prosecutor to strike a black juror whom the defendant does not want on the jury, thus preserving the grounds for the claim without seating that juror)). New York has foreclosed these arguments, however, because it allows *Batson* objections to be

---

9. The respondent suggests that the defense counsel's behavior in this case gave the court reason to believe that "he had abandoned any request for explanations of the prior jurors." Respondent's Mem. of Law 23–24. This interpretation of events does not seem to the court a fair reading of the record. The exchange concerning which peremptory challenge the prosecutor was to explain first reflects simple confusion, not tactical scheming. *See* Trial Tr. 214–15. The lack of objection in

the face of the court's apparent decision to forego three of the required explanations appears to be the result of misunderstanding, or, at worst, oversight. *See id.* at 216–17. In addition, even if Caston's attorney did mistakenly (or even intentionally) create the impression that he was abandoning his request for the remaining explanations, that representation did not, as explained in the text, give the defendant any tactical advantage.

brought after the completion of jury selection. *See Harris,* 151 A.D.2d at 961, 542 N.Y.S.2d at 411.[10] Thus, New York law already permits a defendant to wait and see the composition of the jury before raising the *Batson* claim, even if that delay means that venirepersons have been dismissed or that the *Batson* inquiry is more difficult.[11]

In sum, it is difficult to comprehend how choosing the twelfth juror narrowed the court's options under these circumstances. *Batson* violations are regularly remedied by means that require previously selected jurors to be displaced. The fact that defense counsel could have raised a timely *Batson* claim for the first time at the close of jury selection refutes respondent's arguments that the trial court did not have remedies available to it or that a great risk of manipulation resulted from the delayed objection. Particularly given that six of the seats on the jury had been filled only moments before, without the knowledge of the jurors tapped, the court could have remedied any violation with minimal disruption. The objection was lodged at a "subsequent time when the court had an opportunity of effectively changing" its decision to require only two of the necessary five explanations, N.Y.Crim.Proc.Law § 470.05(2), and was therefore timely within the meaning of New York's contemporaneous objection rule.

## B. Incomplete Batson Inquiries and the Need to Object

■ Even assuming *arguendo* that Caston's renewed objection to the truncated explanation phase of the *Batson* inquiry was flawed, the procedural default invoked by the Appellate Division would not constitute an adequate state ground for that court's decision. New York law does not clearly establish what sort of objection is required in cases such as this, when the *Batson* claim is initially raised during jury selection but the explanation phase of the *Batson* inquiry is not completed. Both *People v. Starks,* 234 A.D.2d 861, 862, 651 N.Y.S.2d 949, 949 (3d Dep't 1996), and *People v. Pagano,* 207 A.D.2d 685, 685, 616 N.Y.S.2d 366, 367 (1st Dep't 1994), remitted cases to the trial court so that it could complete an unfinished *Batson* inquiry. In each case, explanations had not been proffered by the prosecution as to some of the challenged venirepersons and defense counsel had neglected to request those explanations. The Appellate Division remitted one of the cases without any contemporaneous objection by defense counsel, *see Starks,* 234 A.D.2d at 862, 651 N.Y.S.2d at 949, and remitted the other with only a renewal by counsel of the general *Batson* application but not a specific request for the missing race-neutral explanations. *See Pagano,* 207 A.D.2d at 685, 616 N.Y.S.2d at 367. In two other

10. In contrast, *Brewer,* which found a Massachusetts court's procedural bar of a *Batson* claim to be justified because the claim was not brought at the time the challenged peremptory strikes were made, relied on the fact that the Massachusetts Supreme Judicial Court had not previously held *Batson* applications to be timely if raised after jury selection was completed. *See Brewer,* 119 F.3d at 1001. Moreover, that state's contemporaneous objection rule requires objections to be raised " 'at the time the ruling or order of the court is made or sought,' " *id.* at 1002 n. 14 (quoting Mass.R.Crim.P. 22), unlike New York's rule which defines timeliness in terms of the opportunity to remedy the perceived error. *See* N.Y.Crim.Proc.Law § 470.05(2).

11. Several of respondent's arguments challenge New York's general rule concerning the

timeliness of *Batson* claims as stated in *Harris.* Even if, as respondent would apparently favor, the Appellate Division's decision were interpreted as announcing a rule that *Batson* claims should be raised and decided at the time the allegedly discriminatory challenges are made, such a rule would not be an adequate state ground as applied to Caston. To hold Caston to a new rule governing the timeliness of *Batson* claims would be to "apply a rule unannounced at the time of petitioner's trial," and the new rule consequently would be "inadequate to serve as an independent state ground within the meaning of *James [v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984) ]." *Ford,* 498 U.S. at 424, 111 S.Ct. at 858.

cases, by contrast, including one cited by the Appellate Division on Caston's appeal, *Batson* claims based on unfinished explanations were deemed unpreserved because defense counsel failed to make any request to the trial court that it complete the inquiry. *See Font,* 223 A.D.2d 600, 637 N.Y.S.2d 16; *People v. Reeder,* 221 A.D.2d 666, 666–67, 634 N.Y.S.2d 513, 514 (2d Dep't 1995); *see also People v. Duncan,* 177 A.D.2d 187, 192, 582 N.Y.S.2d 847, 850 (4th Dep't 1992) (stating in dicta that to preserve a *Batson* claim based on incomplete explanations, "further objection or protest calling attention to the prosecutor's failure to proffer race-neutral reasons for other peremptory challenges would be required to enable the court to cure the prosecutor's omission"). The court has not located any New York authority addressing the timeliness of a delayed request for missing explanations made, as in this case, after establishing a prima facie case but before the jury was sworn.

The application of the contemporaneous objection rule to bar *Batson* appeals based on incomplete explanations is not, in the words of *James v. Kentucky,* 466 U.S. at 348, 104 S.Ct. at 1835, a "firmly established and regularly followed" practice in New York. New York has no clear rule governing whether a defendant who has already established a prima facie *Batson* violation must specifically request the missing explanations in order to preserve the issue for appeal. *Starks,* 234 A.D.2d at 862, 651 N.Y.S.2d at 949, and *Pagano,* 207 A.D.2d at 685, 616 N.Y.S.2d at 367, each required a trial court to complete the second phase of a *Batson* inquiry despite the defendant's failure to request the missing explanations at trial. Thus, even if the court were to ignore Caston's objection as deficient, some state courts have allowed similarly situated defendants, who had failed to ask the trial court for the missing race-neutral explanations, to pursue their *Batson* claims. On the basis of those authorities, the court finds it difficult to conclude that the bar invoked in this case has

been "strictly or regularly followed." *Wedra,* 988 F.2d at 339.

### C. New York's Interests in Applying the Procedural Bar to This Case

The state interests underlying the application of the contemporaneous objection rule in the *Batson* context, "to permit the court to conduct a hearing at the earliest opportunity while matters are fresh in the minds of the participants, especially the Trial Judge" and to "prevent any delay in starting the trial if a new venire must be drawn," *Harris,* 151 A.D.2d at 961, 542 N.Y.S.2d at 412, are not served by barring Caston's claim. Both interests would have been equally well protected by requiring the prosecutor to give her explanations at the time defense counsel renewed his objection. Unlike cases in which the *Batson* claim is raised on appeal or after a trial has begun, Caston's claim was raised during the jury selection process, while the voir dire was on the minds of all parties, including the judge. The intervening selection of the twelfth juror was quite brief, covering less than a page of the transcript. Respondent cannot seriously contend that the attorneys' or judge's memories would have dimmed by the time the explanations were sought. Nor would any additional delay have been engendered in the event a new venire needed to be called. No occurrence had intervened that would slow that process. As in *Smart v. Scully,* 787 F.2d at 820, the state has "no substantial or legitimate interest" in disallowing Caston's *Batson* objection raised before the jury was sworn.

### D. Summary

The court is unable to discern any significance to the delayed objection or the intervening selection of the twelfth juror that would distinguish this case from New York's general rule that a *Batson* claim is timely so long as raised before the jury is sworn. It is conceivable that a delay between an initial *Batson* inquiry and a renewed objection to incomplete explana-

tions, even if raised before the jury is sworn, could make completing the *Batson* inquiry or remedying a *Batson* violation more difficult. In this case, however, the options available to the court to correct the alleged error did not change. Nor was the delay long enough to impede the reliability of the *Batson* inquiry. Because Caston's objection was renewed prior to the jury being sworn, and because the delay prior to that renewed objection did not make the asserted *Batson* violation any less susceptible to correction, Caston's objection was timely under New York law.[12] The state court's invocation of the contemporaneous objection rule was a departure from its usual practice in *Batson* cases and did not serve legitimate and substantial state interests; consequently, the asserted procedural default lacks a fair and substantial basis in state law and cannot preclude habeas review.

## IV. Remedy

 As the procedural default invoked by the Appellate Division is not an adequate state ground for its decision, this court must consider Caston's claim on the merits. There is no dispute that the trial court did not complete the *Batson* inquiry, seeking as it did explanation as to only two of the five African–American challenged venirepersons. The sole question is of the appropriate remedy.[13] The petitioner asks this court to conduct an evidentiary hearing to examine the remaining three peremptory challenges or, in the alternative, to issue a conditional writ under which Caston will be released if a new trial or hearing is not conducted within a reasonable time. *See* Petitioner's Mem. of Law

**12.** This court is not holding, as the respondent fears, *see* Respondent's Mem. of Law 37–43, that the trial court must *sua sponte* require explanations for all peremptory strikes once a prima facie *Batson* claim is made out. *Batson* left the details of implementation of the rule it established to the states. *See* 476 U.S. at 99, 106 S.Ct. at 1724–25. This decision rests primarily on the fact that Caston's attorney *did* object and that, under New York law, the objection was timely. The court does note, however, that some New York appellate courts have put responsibility on the trial court to complete the inquiry once a prima facie case has been shown. *See Starks*, 234 A.D.2d at 862, 651 N.Y.S.2d at 949; *Pagano*, 207 A.D.2d at 685, 616 N.Y.S.2d at 367.

**13.** The respondent argues that "[t]o be entitled to relief in this case, petitioner must show that the [United States] Supreme Court has expressly ruled that a *Batson* claim can be preserved so long as an objection is raised any time before the jury is sworn, regardless of whether the moving party clearly and specifically raised all the factual and legal grounds in support of the claim during the *Batson* colloquy." Respondent's Mem. of Law 34. This argument is based on a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2254(d)(1), which states that a writ of habeas corpus shall not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Su-

preme Court of the United States." The respondent's argument conflates the substantive basis on which the writ is granted with the preliminary question of whether the underlying claim may be heard on the merits. The substantive federal law applicable in this case, as determined by the Supreme Court, is *Batson*. That, and not the threshold determination that there is not an adequate state ground for the state court's decision, is the basis on which the writ is granted.

Similarly, this decision does not, as respondent contends, announce a new rule in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). That decision prevents, in most cases, the retroactive application to habeas cases of rules announced after the petitioner's conviction became final. *See Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. This case relies on settled law governing federal review of state court procedural defaults, *see, e.g., Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Hathorn v. Lovorn*, 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and *Batson*, which was decided in 1986. Rather than announcing a new rule, this court is assessing the adequacy of the procedural default under New York's own law, as instructed by *Ford. See* 498 U.S. at 423, 111 S.Ct. at 857. New York law is clear that an objection is timely if raised while the court has an opportunity to correct the alleged error, and, in the *Batson* context, that means before the jury is sworn.

19. A *Batson* inquiry is fact- and context-specific, as it requires the court to assess the legitimacy of the prosecutor's proffered reasons for exercising peremptory challenges. This task demands some familiarity with the panel, the voir dire, the lawyers, and the case. Undoubtedly, the passing of four years since the jury selection will make the analysis difficult. *See Scott*, 70 N.Y.2d at 426, 522 N.Y.S.2d at 98, 516 N.E.2d at 1212 (ordering a new trial because four years had elapsed since the defendant's trial and the trial judge was no longer on the County Court making reliable findings "virtually impossible" given that voir dire was not transcribed). As difficult as it may be for the state trial court to conduct the hearing, however, it is better situated to consider the merits of the *Batson* claim than is this court. Federal courts have the authority, under 28 U.S.C. § 2243, to dispose of habeas petitions "as law and justice require," including by granting conditional writs. *See Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 2118, 95 L.Ed.2d 724 (1987). That remedy is appropriate in this case, so that the trial judge might consider whether the prosecutor's use of the peremptory challenges was discriminatory, *see Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir.1993), or, if that inquiry is impossible due to the passage of time, conduct a new trial. *See Scott*, 70 N.Y.2d at 426, 522 N.Y.S.2d at 98, 516 N.E.2d at 1212.

## CONCLUSION

For the reasons explained herein, it is ORDERED that the writ of habeas corpus issue and that the petitioner's judgment and conviction in the case of *People v. Caston*, Queens County Ind. No. 10360/95, be vacated and set aside and the petitioner be released from custody, unless within 60 days the trial court has determined that the prosecutor did not exercise peremptory challenges in violation of the Equal Protection Clause and *Batson v. Kentucky* or proceedings to retry the petitioner are initiated.

The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.